841 F.2d 344
 103 A.L.R.Fed. 1, 56 USLW 2505, 9
Employee Benefits Ca 1609
 William E. BROCK, Secretary of the United States Department
of Labor, Plaintiff-Appellee, Cross-Appellant,
v.
CITIZENS BANK OF CLOVIS; Jeff Jacobs; Lynell G. Skarda;
Oscar Toliver; and T.E. Willmon, Jr.,
Defendants-Appellants, Cross-Appellees.
 Nos. 86-1288, 86-1342.
 United States Court of Appeals,
Tenth Circuit.
 Feb. 25, 1988.
Rehearing Denied April 14, 1988.
 
 Larry D. Newsome (George R. Salem, Robert N. Eccles, and Louis L. Joseph, Washington, D.C.; and William L. Lutz, U.S. Atty., and Ronald F. Ross, Asst. U.S. Atty., Albuquerque, N.M., with him on the brief), U.S. Dept. of Labor, Washington, D.C., for plaintiff-appellee, cross-appellant.
 Charles C. Spann of Spann, Latimer & Hollowwa, Albuquerque, N.M., for defendants-appellants, cross-appellees.
 Before MOORE and BARRETT, Circuit Judges, and ANDERSON, District Judge.*
 JOHN P. MOORE, Circuit Judge.
 
 
 1
 This appeal presents several questions applying the Employee Retirement and Income Security Act (ERISA) to specific transactions involving the Citizens Bank of Clovis Pension Plan. The district court held that Citizens Bank of Clovis (Bank) and the trustees of the Bank's plan violated the diversification requirement and the prohibition against party-in-interest transactions contained in ERISA. The defendant Bank and the trustees appeal that decision. The court refused, however, to hold that ERISA's self-dealing prohibition was violated when the trustees invested plan assets in permanent loans to third parties to whom the Bank had provided interim financing. On procedural grounds, the court also refused to require the defendant Bank to restore to the plan the interest it earned from the loans. The plaintiff Secretary appeals the latter two decisions. Our analysis leads us to conclude the trial court properly resolved all issues, and we affirm.
 
 
 2
 The plan for employees of the Bank has existed since 1958. In 1982, the Regional Administrator of the Department of Labor notified the trustees that eighty-five percent of the plan assets had been invested in real estate mortgages around Clovis, New Mexico. The Administrator contended these loans were an apparent violation of 29 U.S.C. Sec. 1104(a)(1)(C), which requires diversification of a plan's investments. The Administrator warned the trustees to reduce the plan's investment in real estate to thirty percent of its assets, or legal action might be taken. The trustees responded that all their investments were prudent and properly diversified. Unsatisfied with the response and concerned over other transactions, the Secretary filed this case.
 
 
 3
 The Secretary's complaint presented three issues to the district court. First, he argued the trustees' alleged investment of over sixty-five percent of the plan's assets in commercial real estate first mortgages violated the diversification requirements of Sec. 1104.[1] Second, the Secretary alleged the trustees violated 29 U.S.C. Sec. 1106(a)(1)(B) when, on behalf of the plan, they borrowed money from the Bank. Third, he contended the trustees violated their fiduciary responsibilities when they made two loans to persons who used the proceeds to pay off previous loans from the Bank. The basic facts surrounding these issues were not in controversy.
 
 I.
 
 4
 The trial court engaged in a lengthy and well-reasoned analysis of the diversification and loan issues constituting the appeal brought by the Bank and the trustees. We believe the court's reasoning on these issues was flawless. In short, the trial court concluded the diversification requirement was not met essentially because the trustees had chosen to invest in "one type of security" which did not protect against a multitude of risks. The court further found that the trustees failed to establish the investments were prudent notwithstanding the lack of diversification. Both these conclusions are fully supported in the record, and we adhere to the trial court's analysis.
 
 
 5
 The district court further found that any loan between a plan and a party in interest is a per se violation of 29 U.S.C. Sec. 1106(a)(1)(B). The trustees contended there was no violation because they did not loan plan assets to the Bank. The court correctly concluded, however, that Sec. 1106 proscribes loans made by the party in interest to the plan as well as the reverse.
 
 
 6
 We also agree with the district court that the trustees' reduction of the percentage of outstanding loans by the plan did not moot the issue of diversification. Because the defendants not only refused to assure the district court that they would maintain the reduced level of investments in real estate loans, but also "insist[ed] in a free hand in selecting investments for the plan," the diversification issue persists. Clearly, the issue could arise again, and the district court correctly proceeded to resolve it. Cf. Weinstein v. Bradford, 423 U.S. 147, 149, 96 S.Ct. 347, 348-49, 46 L.Ed.2d 350 (1975).
 
 II.
 A.
 
 7
 Turning to the Secretary's cross-appeal, we consider whether ERISA trustees are prevented from lending money to unrelated persons who thereafter use the loan proceeds to pay obligations to a party in interest. Precisely, we must decide whether 29 U.S.C. Sec. 1106 was violated when the trustees approved loans from plan funds which permitted the borrowers to pay off interim financing they had received from the Bank.
 
 
 8
 We note, initially, there is no specific provision of Sec. 1106 which prohibits a fiduciary from using plan assets for such a transaction. If the violation exists, therefore, it must arise by implication. It is the Secretary's contention that the transaction here implicated both Sec. 1106(a), which proscribes specific transactions between the plan and a party in interest, and Sec. 1106(b), which proscribes transactions between a plan and a fiduciary. He contends the requirement of 29 U.S.C. Sec. 1104 that a fiduciary act solely for the benefit of the plan is applicable here as well. Notwithstanding his inability to point to any provision of ERISA that specifically prohibits the transaction he complains of here, the Secretary argues the defendants committed a per se violation of the statute. We do not agree.
 
 
 9
 Alleging the transactions in controversy are inherently suspicious, the Secretary argues around the absence of a specific prohibition in the statute. He states that the public interest in maintaining the integrity of employee retirement plans demands a strict prohibition of any dealings in which doubt may be cast upon the loyalty of the fiduciary. While we do not denigrate the validity of the Secretary's concept of fiduciary responsibility, we are as unwilling as the district court to translate that concept into a per se violation when Congress has not done so. We agree with the district court that unless the act complained of falls within the specific list of dealings proscribed by Sec. 1106 (or within the sole dealing provision of Sec. 1104(a)(1)), the transaction does not constitute a per se violation of ERISA.
 
 
 10
 This is not to say the interjection of a third party into an otherwise prohibited transaction will sanitize an illegal dealing. Indeed, Sec. 1106(a)(1) by its own terms applies to sham dealings by proscribing "indirect" transactions. Accordingly, if the Secretary could have proved that the loans to third parties were a sham to avoid application of Sec. 1106(a), the transactions would have been prohibited transfers of plan assets.
 
 B.
 
 11
 The Secretary's attempt to avoid the burden of proving a violation of fiduciary duty underscores the absence of any specific ERISA provision upon which we can rely to find the transactions complained of constituted per se violations. He attempts to bridge this gap by suggesting that because the trustees were also employees of the Bank, they made the loans to protect their jobs. Hence, he contends the trustees violated Sec. 1106(b) which forbids dealings between the fiduciary and the plan.
 
 
 12
 The Secretary would like us to presume that the trustees acted for their own benefit simply because they were employees of the Bank. He argues that it was in the best interest of the Bank to have the interim financing paid off; therefore, to please their employer and thus protect their jobs, the trustees approved the third party loans. Nothing but the Secretary's hypothesis supports this argument.
 
 
 13
 We believe the trial court correctly perceived that the two loans questioned by the Secretary were different from those the court found wanting between the Bank and the plan. Because we cannot find that the two loans constituted per se violations of either Sec. 1104 or Sec. 1106, the trial court properly ruled the Secretary failed to meet his burden of proof. While we do not hold the transactions were free of ERISA violation, we simply conclude the trial court correctly ruled the trustees' approval of the loans was not a per se violation of the statute.[2]
 
 III.
 
 14
 Finally, the Secretary contends the trustees should be required to return to the plan the amount of interest the plan paid to the Bank for the loans made in violation of 29 U.S.C. Sec. 1106(a)(1)(B). Although the claim for recovery of such sums was set out in the pretrial order, it was not addressed in the trial court's dispositional memorandum and order. Noting the court's failure to deal with the claim, the Secretary filed a motion pursuant to Fed.R.Civ.P. 59(e) to amend the judgment to include, among other things, an order requiring reimbursement for the loan interest. Without discussing the merits of the motion, the court denied relief on the ground the motion was not timely. While the Secretary argues those merits in this court, he fails to address the reason why his motion was denied in the trial court. Perhaps that failure is due to the correctness of the ruling. Because the Secretary's motion was not filed until thirteen days after entry of the findings of fact and conclusions of law, the trial court correctly denied relief on jurisdictional grounds. Beliz v. McLeod & Sons Packing Co., 765 F.2d 1317 (5th Cir.1985); Scott v. Younger, 739 F.2d 1464 (9th Cir.1984).
 
 
 15
 AFFIRMED.
 
 
 
 *
 Honorable Aldon J. Anderson, United States District Judge for the District of Utah, sitting by designation
 
 
 [1]
 The original investment had been reduced to 65% by the time the complaint was filed
 
 
 [2]
 None of the cases relied upon by the Secretary belie this conclusion. He relies chiefly upon Cutaiar v. Marshall, 590 F.2d 523 (3d Cir.1979); Gilliam v. Edwards, 492 F.Supp. 1255 (D.N.J.1980); Freund v. Marshall & Ilsley Bank, 485 F.Supp. 629 (W.D.Wis.1979); and Marshall v. Kelly, 465 F.Supp. 341 (W.D.Okla.1978). These cases are all distinguishable factually because in each the fiduciary dealt directly with either himself or a party in interest to commit a specifically prohibited act. In none of those cases was it contended a fiduciary committed a per se violation by dealing with a third party