**Lynn MARTIN, Secretary of the United States Department of Labor, Plaintiff,**

v.

**The NATIONAL BANK OF ALASKA, Defendant.**

**No. A86–548 Civil.**

United States District Court, D. Alaska.

Aug. 28, 1992.

Order Denying Reconsideration Jan. 21, 1993.

---

Michael R. Spaan, U.S. Atty., Anchorage, AK, for plaintiff.

Trigg T. Davis, Davis & Goerig, Anchorage, AK, for defendant.

## ORDER

HOLLAND, Chief Judge.

Cross–Motions for Summary Judgment

The defendant, National Bank of Alaska ("NBA"), brings a renewed motion for summary judgment[1] as to the entirety of plaintiff's first amended complaint. The Secretary[2] opposes NBA's motion for summary judgment, and has filed a cross-motion for partial summary judgment.[3] In the cross-motion, the Secretary requests summary judgment be granted in favor of the Government as to the Secretary's claims that NBA's involvement in three loan transactions violates Sections 406(a)(1)(D), (b)(1), and (b)(2) of ERISA,[4] and that the receipt of fees by NBA from borrowers violates Section 406(b)(3).

This court has jurisdiction pursuant to Section 502(e) of ERISA, 29 U.S.C. § 1132(e)(1).

The Secretary alleges that NBA invested the assets of plans within the meaning of ERISA Section 3(3), 29 U.S.C. § 1002(3), as to which NBA was a fiduciary, in mortgage loans (hereinafter "take-out loans") used to retire construction loans made to the mortgagors by NBA. The Secretary alleges that this practice is a violation of NBA's fiduciary duties as established by ERISA.

The Secretary also alleges that, in connection with the "take-out" loans, NBA received loan origination fees from the borrowers and loan servicing fees from the plans. The Secretary alleges that receipt of such fees is a violation of NBA's fiduciary duties as established by ERISA.

At issue is:

(1) whether the claims based on "take-out loans", origination fees, and servicing fees are barred by the statute of limitations;

(2) whether common trust funds, the source of one of the loans, is subject to the fiduciary duties established by ERISA; and

(3) whether the complained of transactions are prohibited by ERISA.

## I.

## BACKGROUND

The loans at issue are long-term mortgage loans originated by NBA on behalf of its Profit–Sharing Trust and Common Trust Fund "A". Borrowers would apply for a permanent loan and a construction loan at the same time. Before a permanent loan could be made, all secured debts on the property had to be paid. If there were a construction loan on the property, NBA would obtain a commitment to the permanent loan from the plan before, or at the same time, the construction loan was made.[5] In relation to these permanent loans, NBA re-

---

1. Filed April 15, 1992, as Clerk's Docket No. 164.

2. Lynn Martin, Secretary of the United States Department of the Interior (herein "the Secretary").

3. The opposition and cross-motion were both filed May 7, 1992; Clerk's Docket No. 166 and No. 167, respectively.

4. Employee Retirement Security Act of 1974, 29 U.S.C. §§ 1001–1461.

5. See Exhibit 1, ¶¶ 22–26, attached to Clerk's Docket No. 90.

ceived origination fees from the borrowers. In return for these fees, NBA fulfilled a range of services, including but not limited to, helping borrowers fill out mortgage applications, doing credit checks to ensure borrowers could meet payments, obtaining an appraisal of the real estate, and helping to resolve the problems that might arise in the borrowers' credit worthiness.[6]

The transactions at issue consist of three loans:

(1) on October 20, 1980, NBA's Common Trust Fund "A" (hereinafter "CTFA") made a loan for 50% of $593,000 to Bijos Enterprises (hereinafter "the Bijos loan"), and NBA received an origination fee from Bijos;

(2) on February 3, 1981, NBA's Profit-Sharing Trust (hereinafter "NBA–PST") made a loan for 10% of $170,175 to a partnership of Messrs. Dickinson, Oswald, and Walch (hereinafter "DOWL"), and NBA received both an origination fee from DOWL and a servicing fee from NBA–PST; and

(3) on March 18, 1982, NBA–PST made a loan for $140,000 to a partnership called Sitka Bottling (hereinafter "SITKA"), and NBA received a servicing fee from NBA–PST.[7]

## II.

## DISCUSSION

Under Rule 56(c), Federal Rules of Civil Procedure, a party to a lawsuit may move for summary judgment if he can show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. The moving party has the burden of establishing that there exists no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). For purposes of summary judgment, a material fact dispute is considered "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).[8]

## A.

### Statute of Limitations

■ NBA asserts, at page 10 of the brief in support of its renewed motion for summary judgment, that any claim based on the DOWL loan or the Bijos loan is barred by the statute of limitations.[9] The statute of limitations arguments raise three distinct issues:

(1) whether the Secretary's claims based on the Bijos and DOWL "take-out" loans are barred by the statute of limitations;

(2) whether the Secretary's claim based on NBA's receipt of servicing fees for the DOWL "take-out" loan is barred by the statute of limitations; and

(3) whether the Secretary's claims based on NBA's receipt of origination fees for both the DOWL and Bijos loans are barred by the statute of limitations.

Section 413 of ERISA provides:

No action may be commenced under this subchapter with respect to a fiduciary's

---

**6.** *Id.* at ¶¶ 10–11.

**7.** It should be noted that the dates of the loans are taken from NBA's renewed motion for summary judgment at 6–7 (Clerk's Docket No. 164). The importance of these dates relates to the *statute of limitations* issue. As long as the alleged ERISA violation occurred after October 17, 1980, the ERISA statute of limitations has not run. NBA asserts that all alleged ERISA violations occurred when the loan servicing agreements were made. The Secretary asserts that such violations occurred when the loans were made. NBA has admitted that the three loans at issue were entered into after October 17, 1980. This issue will be discussed in detail below.

**8.** NBA asserts that many of the documents at issue in this case have not been authenticated. See defendant's statement of genuine issues, filed May 26, 1992 (Clerk's Docket No. 171). Since the documents were prepared by NBA and produced by NBA during discovery, there is sufficient circumstantial evidence to support their authentication. *Denison v. Swaco Geolograph,* 941 F.2d 1416, 1423 (10th Cir.1991).

**9.** The Secretary is no longer seeking relief for fees paid by the CTFA for servicing of the Bijos Loan. *See* plaintiff's opposition to renewed motion for summary judgment at 2, n. 3 (Clerk's Docket No. 166).

breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—

(1) six years after (A) the date of the last action which constituted a part of the breach or violation ... or

(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation[.]

29 U.S.C. § 1113.

The statute of limitations itself indicates a two-step analysis of accrual of an ERISA action: first, when did the alleged "breach or violation" occur; and second, when did [the plaintiff] have "actual knowledge" of the breach or violation?

*Ziegler v. Connecticut General Life Ins. Co.,* 916 F.2d 548, 550 (9th Cir.1990); *see Phillips v. Alaska Hotel & Restaurant Emp. Pension Fund,* 944 F.2d 509, 520–521 (9th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1942, 118 L.Ed.2d 548 (1992).

Following *Ziegler* and *Phillips,* Judge Kleinfeld ruled on the issue of the statute of limitations and granted summary judgment in part.[10] Judge Kleinfeld separately addressed the application of the statute of limitations to the "take-out" loans and the fees charged in relation to the "take-out" loans.

Judge Kleinfeld spoke first to the claims based on the "take-out" loans. Looking to the analysis in *Ziegler,* Judge Kleinfeld addressed the issue of when the violation of

ERISA occurred and held: "where the thing wrong with the transactions is that the transaction was made, and the transaction was made more than six years before the lawsuit was filed, the claim based on that transaction is barred."[11] NBA asserts that the alleged violation of ERISA occurred when servicing agreements were made between the plans and NBA, all of which were executed prior to October 17, 1980.[12] The Secretary, on the other hand, asserts that the alleged violations of ERISA occurred when the DOWL and Bijos loans were made; the Secretary identifies the documents which authorized the Bijos and DOWL loans. The dates on all such documents are after October 17, 1980.

The Secretary does not object to NBA entering into servicing agreements with the plans for future loans. The Secretary's claims are based on the alleged self-dealing of the "take-out" loans. The servicing agreements make no mention of the Bijos or the DOWL loans or of "take-out" loans to be made in the future. The servicing agreements have legitimate business purposes for the trusts. They do not expressly contemplate or necessarily imply any violation of ERISA on the subject of "take-out" loans or self-dealing. The potential violation of ERISA is the self-dealing nature of the loans which were executed after October 17, 1980. Thus, the Secretary's claims based on the

---

**10.** Transcript of proceedings of Sept. 3, 1991 (re defendant's motion for summary judgment) (Clerk's Docket No. 136).

**11.** *Id.* at 46.

**12.** At Exhibit 2 of its reply brief (Clerk's Docket No. 145), NBA contends that the Bijos loan was made from Common Trust Fund "A" pursuant to servicing agreements:

(1) Sale and Servicing Agreement, signed Jan. 1, 1974, between NBA and Nabalaska & Co. (NBA's registered nominee name for trust accounts in general) (Exhibit 6 to NBA's reply brief (Clerk's Docket 145)). The agreement provides for NBA to originate and service mortgages for "Nabalaska" accounts, including Trust Fund "A".

(2) Closing and Servicing Agreement, signed June 2, 1974, between NBA and NBA as trustee of Common Trust Fund "A". (Exhibit 98 to NBA's motion for summary judgment (Clerk's

Docket No. 90)). The agreement provides for NBA to originate mortgage loans for Common Trust Fund "A" and charge a servicing fee. *Id.* at ¶ III, ¶ IV.

(3) Sales and Participation Agreement, signed Aug. 9, 1978, between NBA and Nabalaska & Co.–180. (Exhibit 17, ¶ 7(d) to NBA's motion for summary judgment (Clerk's Docket No. 90)). The agreement provides for NBA to service mortgage loans for Nabalaska for a fee.

(4) Loan Participation Agreement, signed Nov. 30, 1973, between NBA and Nabalaska & Co. (Exhibit 95, ¶ 17 to NBA's motion for summary judgment (Clerk's Docket No. 90)). The agreement provides for NBA to originate and service mortgage loans for Nabalaska accounts which include Common Trust Fund "A" for a fee.

NBA also contends that the DOWL loan was originated and serviced by the sale and servicing agreement of Jan. 1, 1974, (Exhibit 6 to Clerk's Docket No. 145) and the loan participation agreement of Nov. 30,. 1973 (Exhibit 95 to Clerk's Docket No. 90).

"take-out" loans are not barred by ERISA's six-year statute of limitations.

Judge Kleinfeld next addressed the origination fees and servicing fees and held:

> [I]t looks as though there can be two things wrong with the fee. Number one, they shouldn't charge it at all; and number two, they charge too much. If they shouldn't charge it at all, then it looks as though your cause of action accrues as soon as they enter into an agreement saying they'll charge it. If they charge too much, and the agreement doesn't say how much they're going to charge, then it seems that your cause of action doesn't accrue until they charge the money and you can look at it and say it's too much.

Transcript of proceedings of Sept. 3, 1991 (re defendant's motion for summary judgment) at 38 (Clerk's Docket No. 136). The Secretary alleges that NBA's receipt of any servicing fees for the "take-out" loans from the plan violated ERISA. The Secretary does not allege that the amount of the fees received was unreasonable. The Secretary also alleges that NBA's receipt of origination fees from the borrowers violated ERISA. The Secretary does not allege that the amount of fees received was unreasonable. Since the Secretary's claims are not based on the amount of the fees, according to Judge Kleinfeld's ruling, the statute of limitations begins to run when the parties enter into an agreement saying they will charge the fee. The general servicing agreements provide for servicing fees but not for origination fees. Because all of the servicing agreements were executed prior to October 17, 1980, the claims based on the servicing fees are barred by the six-year statute of limitations. Because the agreements for origination fees were executed after October 17, 1980, the claims based on origination fees are not barred.

---

**13.** Exhibit 95 at 1 to NBA's motion for summary judgment (Clerk's Docket No. 90).

**14.** Common trust funds have been defined as: "a group of investments managed by a bank in accordance with a written plan on behalf of several individual fiduciary accounts whose assets are lawfully contributed to the fund." *First*

The remaining issue is whether the self-dealing claims based on the Bijos and DOWL loans and the claims based on NBA's receipt of origination fees for the Bijos and DOWL loans are barred by the three-year statute of limitations. If the Secretary had "actual knowledge" of the alleged violations prior to October 17, 1983, then the claims are barred. NBA relies on a loan participation agreement between NBA and Nabalaska & Company[13] to establish that the Secretary received actual notice of the agreements in question on December 12, 1978. This document reflects a handwritten notation which does not state who marked the date or for what purpose the document was dated. NBA has not met its burden of establishing that the Secretary had actual knowledge of the "take-out" loans or the origination fees prior to October 17, 1983.

### B.

### *Common Trust Fund "A"*

The Bijos loan involved the commitment of assets of a common trust fund. NBA contends that ERISA does not govern common trust funds.

NBA argues that common trust funds,[14] which contain investments by employee benefit plans, should not be treated as employee benefit plans subject to ERISA. NBA's support for this contention is that for purposes of exemption from prohibited transactions (29 U.S.C. §§ 1106, 1107(a)), ERISA exempts transactions between a plan and a common or collective trust fund (ERISA § 408(b)(8), 29 U.S.C. § 1108(b)(8)). If NBA's position were the law, then all such plans could put all of their assets beyond the protection of ERISA by the simple act of placing the assets in a common trust fund. Clearly Congress did not intend this. ERISA does not expressly remove common trust funds from its protection. *See* 29 C.F.R. § 2510.3–

*Nat'l Bank of Chicago v. Comptroller,* 956 F.2d 1360 (7th Cir.1992) (quoting William P. Wade, *Bank–Sponsored Collective Investment Funds: An Analysis of Applicable Federal Banking & Securities Laws,* 35 Bus.Law. 361 (1980)), *petition for cert. filed* (June 18, 1992).

101(h); *see First Nat'l Bank of Chicago v. Comptroller,* 956 F.2d 1360 (7th Cir.1992).

NBA argues that the regulations of the Office of the Comptroller of the Currency (hereinafter "OCC") should control common trust funds in which plan assets are invested, not ERISA. Section 514(d) of ERISA provides: "[n]othing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States ... or any rule or regulation issued under any such law." 29 U.S.C. § 1144(d). ERISA "is explicit that it shall not be construed to invalidate or impair any federal regulation." *First Nat'l Bank of Chicago,* 956 F.2d at 1368.

Pursuant to 12 U.S.C. § 92a(a), the Comptroller of the Currency was given authority to regulate national banks acting in the capacity of trustee "when not in contravention of State or local law." Acting under this authority, regulations were promulgated regulating the fiduciary duties of national banks in relation to the investment of common trust funds (12 C.F.R. § 9.18) and self-dealing (12 C.F.R. § 9.12). NBA argues that the OCC should have exclusive jurisdiction because the OCC has promulgated regulations. This is not the rule. The banking laws regulate common trust funds. However, when common trust funds contain plan assets, those common trust funds will also be subject to ERISA. *See* 29 C.F.R. § 2510.3–101(h). If the practices complained of are expressly prohibited by ERISA and expressly allowed by the banking statutes, then a conflict arises and ERISA will not apply. However, if ERISA prohibits an activity and the banking laws are silent on the point, then no conflict arises and ERISA will apply. *See Shaw v. Delta Airlines,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983).

■ NBA alleges that just such a conflict exists. The Secretary asserts that the "take-out" loans are violations of ERISA. NBA claims that in 1978 the OCC expressly provided that such a practice was not in violation of the banking laws. To support this view, defendant NBA in its reply brief[15] points to a position taken by the Comptroller in the Comptroller's Handbook for National Trust Examiners (1978).[16] We must decide whether the handbook is a "rule or regulation" that arises under a law of the United States. 29 U.S.C. § 1144(d).

While there is no law directly on point, there is authority which the court finds persuasive. An opinion of the Comptroller General is entitled to weight. *Pacific Legal Foundation v. Goyan,* 664 F.2d 1221, 1227 (4th Cir.1981). The NBA has not relied upon an opinion, it has cited a position taken in a handbook put out by the Comptroller. The handbook is merely advisory, it does not address actual situations where the Comptroller was required to make findings and conclusions. *See First Nat'l Bank of Chicago v. Comptroller,* 956 F.2d 1360 (7th Cir. 1992). The court concludes that the purpose of the handbook is advisory and is therefore not a rule or regulation. As such, no conflict exists between ERISA and the banking regulations.

■ ERISA contains a broad preemption clause which provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan[.]" ERISA Section 514(a), 29 U.S.C. § 1144(a). ERISA contains a generalized exception to the preemption clause which provides that "nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or secu-

**15.** Defendant's reply brief in support of renewed motion for summary judgment (Clerk's Docket No. 169).

**16.** *Id.* at Appendix page i (copy of page C–3 of Comptroller's Handbook). Section 9.3220 as it appeared in the 1978 Comptroller's Handbook provided:

Unless specifically authorized, it is not permissible for a national bank to make real estate mortgage loans and subsequently sell them to various accounts in its trust department, unless the loans were earmarked at inception for this ultimate purpose. However, where such an investment is within the authority of the governing instrument, a national bank may invest fiduciary funds in a real estate loan where the bank itself has provided the construction financing if a firm commitment for one or more named trusts to take over the permanent financing is made at the time of the construction loan or prior thereto.

rities." ERISA Section 514(b)(2)(A), 29 U.S.C. § 1144(b)(2)(A). The specified exception to the savings clause provides that "[n]either an employee benefit plan ... nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies." ERISA Section 514(b)(2)(B), 29 U.S.C. § 1144(b)(2)(B). NBA asserts that The Alaska Common Trust Fund Act (AS §§ 06.35.010, et seq., hereinafter "Alaska CTFA") controls.

We assume, without deciding, that Alaska CTFA "relates to" an employee benefit plan and that it is a law regulating banking under the savings clause. However, we still find that such a law is preempted by ERISA.

■ In the preemption analysis, whether a state law falls within the savings clause is important, but not determinative. Equally important is whether Congress created a comprehensive scheme. *Kanne v. Connecticut General Life,* 867 F.2d 489, 494 (9th Cir.1988), *cert. denied,* 492 U.S. 906, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989) (citing *Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)). In *Kanne,* the Ninth Circuit looked to the civil enforcement provisions of ERISA and concluded that the California "unfair insurance practices" statute could not supplement the ERISA civil enforcement provisions. The court in *Kanne* relied on *Pilot Life* where the Supreme Court had looked to the policy choices reflected in ERISA Section 502(a), 29 U.S.C. § 1132, and concluded that to allow a state law to preempt the civil remedies provision would be to undermine the federal scheme. *Kanne,* 867 F.2d at 494 (quoting *Pilot Life* ).

We reach the same conclusion here. Congress created a comprehensive scheme to regulate the actions of fiduciaries of plans when it passed ERISA Sections 404 and 406. Congress expressed policy choices when it

adopted the common law fiduciary duties in ERISA Section 404, and then expressly prohibited certain transactions in ERISA Section 406. To allow a state law like Alaska CTFA to preempt ERISA would be to frustrate the intent of Congress as expressed in ERISA. ERISA governs the activities of Common Trust Fund "A" which are in issue here.

## C.

### Loans

■ In its first amended complaint, the Secretary alleges that NBA invested assets of plans as to which it was a fiduciary in mortgage loans used to retire construction loans made to the mortgagors by NBA and that such a practice is a violation of ERISA Section 404(a)(1)(A), 406(a)(1)(D), 406(b)(1), and 406(b)(2).[17] NBA has moved for summary judgment in its favor as to the Secretary's claim that "take-out" loans violate ERISA. The Secretary has moved for summary judgment in its favor on the same claims.

ERISA Section 404(a) provides:

[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

    (A) for the exclusive purpose of:

    (i) providing benefits to participants and their beneficiaries; and

    (ii) defraying reasonable expenses of administering the plan[.]

29 U.S.C. § 1104(a)(1)(A). In *Acosta v. Pacific Enterprises,* 950 F.2d 611 (9th Cir.1991), the Ninth Circuit discussed the duty created by Section 404(a)(1)(A):

Although ERISA is a "comprehensive and reticulated statute," it does not purport to state expressly each and every one of a fiduciary's duties. Rather, ERISA's legislative history demonstrates that "Congress invoked the common law of trusts to define the general scope of [a fiduciary's] authority and responsibility." The language of section 404(a) reflects this congressional intent that common law trust principles animate the fiduciary responsi-

---

**17.** First Amended Complaint at ¶¶ 12, 13, 14, and 15 (filed as Clerk's Docket No. 14).

bility provisions of ERISA. Under ERISA, a fiduciary is required to discharge its duties "solely in the interest of the participants and beneficiaries," 29 U.S.C. § 1104(a)(1) (1988)....

However, section 404(a) further provides that a fiduciary must discharge its duties "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

*Acosta,* 950 F.2d at 618 (citations omitted).

There is no genuine issue as to whether NBA acted solely in the interest of the plan when it arranged the "take-out" loans. When the permanent loans were originated by NBA, NBA knew, in no uncertain terms, that the proceeds of the permanent loan would be used to retire the construction loan made by NBA. It was in NBA's interest to have the plans fund the permanent loans. The Secretary's motion for summary judgment is granted as to Section 404(a)(1)(A).

Both parties have moved for summary judgment on the issue of whether NBA violated provisions of ERISA Section 406. While Section 404 deals with fiduciary standards, Section 406 addresses express prohibited transactions. *Leigh v. Engle,* 727 F.2d 113, 126 (7th Cir.1984), *cert. denied,* 489 U.S. 1078, 109 S.Ct. 1528, 103 L.Ed.2d 833 (1989). Section 406(a) provides:

(1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—

....

(D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan....

29 U.S.C. § 1106. The Secretary asserts that NBA is a party in interest as defined in ERISA Section 3(14), 29 U.S.C. § 1002(14)(A), and that the bank received plan assets when the borrower repaid the bank on the construction loan with the proceeds of the mortgage loan. The issue here is whether the take-out financing is an "indirect" transfer of assets of the plan to NBA, a party in interest.[18]

There is no genuine issue as to whether NBA received plan assets. The construction loans and the permanent loans were arranged at the same time, and the plan assets used to fund the permanent loans were intended to go directly to NBA to satisfy the construction loans made by NBA. The Secretary's motion for summary judgment is granted as to Section 406(a)(1)(D).

ERISA Section 406(b) provides:

A fiduciary with respect to a plan shall not—

(1) deal with the assets of the plan in his own interest or for his own account,

(2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries....

29 U.S.C. § 1106. The Secretary claims that the take-out loans at issue violated ERISA Sections 406(b)(1) and 406(b)(2).[19]

■ While the Ninth Circuit has not directly addressed this issue, the majority of

---

**18.** NBA relies on *Brock v. Citizens Bank of Clovis,* 841 F.2d 344 (10th Cir.1988), *cert. denied,* 488 U.S. 829, 109 S.Ct. 82, 102 L.Ed.2d 59 (1988). In *Brock,* the Secretary alleged that a take-out transaction, similar to the one now before the court, was a violation of Section 406(a)(1). The court held that such a transaction would be a violation of ERISA only if the Secretary could show that the loan to the borrower was a sham designed to avoid the prohibition of ERISA Section 406(a)(1) "indirect" transactions. *Id.* at 347.

*Brock* is distinguishable from the case at hand. The loans in *Brock* were made to unrelated persons and *thereafter* the interim loans made by the

bank were retired. It is unclear whether the bank knew that the permanent loan was to be used to retire the interim loans. The case before the court is entirely different. NBA knew, at the time the permanent loans were made, that the borrowers would use the mortgage loan proceeds to satisfy the construction loans made by NBA. They were arranged by NBA as a package deal. These were not sham loans; but NBA knew that the mortgage loans from the plan assets would indirectly benefit a party in interest—the bank itself.

**19.** First Amended Complaint at ¶¶ 14 and 15 (Clerk's Docket No. 14).

circuits have broadly construed the fiduciary duties established by ERISA Section 406. *Lowen v. Tower Asset Management, Inc.,* 829 F.2d 1209, 1213 (2d Cir.1987) (protection of beneficiaries and notice of fiduciaries require that Section 406(b) be broadly construed); [20] *Cutaiar v. Marshall,* 590 F.2d 523 (3d Cir.1979). In *Leigh v. Engle,* 727 F.2d 113 (7th Cir.1984), *cert. denied,* 489 U.S. 1078, 109 S.Ct. 1528, 103 L.Ed.2d 833 (1989), an oft-cited case on this point, the Seventh Circuit held that the actions of the fiduciaries of a plan with respect to investment in contests for corporate control violated their fiduciary duties under ERISA Section 404(a). *Leigh,* 727 F.2d at 124–126, 127–132. In conjunction with the holding that the fiduciary violated Section 404(a), the court addressed the prohibited transactions under Section 406 and found that such prohibitions, consistent with the legislative intent, should be read broadly. *Id.* at 126–27.

This court agrees with the majority of circuits and reads the prohibitions set forth in ERISA Section 406(b) broadly.

ERISA Section 406(b)(1) prohibits the fiduciary with respect to a plan from dealing "with the assets of the plan in his own interest or for his own account[.]" 29 U.S.C. § 1106(b)(1).

When NBA arranged the permanent loans at the same time as the construction loans, NBA was committing the assets of the plan for its own account. By committing plan assets to the permanent loan, NBA was acting in its own interest, assuring itself that the construction loan would be virtually without risk.

The Secretary's motion for summary judgment is granted as to ERISA Section 406(b)(1).

Section 406(b)(2) prohibits the fiduciary with respect to a plan from acting in "any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan[.]" 29 U.S.C. § 1106(b)(2).

At issue in *Cutaiar v. Marshall,* 590 F.2d 523 (3d Cir.1979), was a transaction between two plans. The plans were administered jointly due to the large overlap in participants in each plan and other similarities. The trustees for both plans were the same. The trustees decided that the welfare plan would borrow $4 million from the pension plan. The Secretary of Labor issued a letter informing the trustees that such a loan was a violation of ERISA Section 406(b)(2). The trustees brought an action requesting declaratory relief that the letter was null and void; the district court granted the relief. The court of appeals reversed the district court, and agreed with the Secretary's interpretation that Section 406(b)(2) prohibited "transaction[s] 'adverse' in the technical sense[.]" *Id.* at 529. The Secretary need not show "fiduciary misconduct, reflecting harm to the beneficiaries[.]" *Id.* The court held that "[w]hen identical trustees of two employee benefit plans whose participants and beneficiaries are not identical effect a loan between the plans without a § 408 exemption, a per se violation of ERISA exists." *Id.* The court explained:

> Fiduciaries acting on both sides of a loan transaction cannot negotiate the *best* terms for either plan. By balancing the interests of each plan, they may be able to construct terms which are fair and equitable for both plans.... But without the formal procedures required under § 408, each plan deserves more than a balancing of interests. Each plan must be represented by trustees who are free to exert the maximum economic power manifested by their fund whenever they are negotiating a commercial transaction.

*Id.* at 530 (emphasis in original). *Cutaiar* was cited with favor by the Ninth Circuit in *Donovan v. Mazzola,* 716 F.2d 1226, 1239–40 (9th Cir.1983), *cert. denied,* 464 U.S. 1040, 104 S.Ct. 704, 79 L.Ed.2d 169 (1984), in affirming a district court's finding of a violation of ERISA Section 406(b)(2).[21] *Donovan* involved a transaction between two plans with

---

**20.** Criticized on other grounds in *Al Nieto v. Ecker,* 845 F.2d 868 (9th Cir.1987).

**21.** It should be noted that *Cutaiar* was cited with disapproval in *Brock v. Citizens Bank of Clovis,* 841 F.2d 344 (10th Cir.1988).

identical trustees but the participants in the plan were not identical.

In the situation at hand, we do not have one plan borrowing from another, nor do we have identical trustees. In *Freund v. Marshall,* 485 F.Supp. 629 (W.D. Wisconsin 1979), the district court found that a loan made by the fiduciaries of the plan to sponsoring companies violated Section 406(b)(2). The court held, in respect to those fiduciaries who were management in all sponsoring companies, that those fiduciaries represented both sides in the transaction. In respect to the fiduciaries who were not management in all the companies, but only some, the court held that "the companies were so related and interdependent, that each fiduciary had an interest in each borrower, and, in effect, represented both sides in the transaction." *Id.* at 638.

■ There is no genuine issue as to whether NBA represented a party with interests adverse to the plan.[22] NBA received origination fees from the borrowers of the three loans at issue in exchange for NBA's help in obtaining the permanent loans from the plans. The interests of the lender and the borrower are inherently adverse, and to represent both sides creates a conflict. Does NBA act on behalf of the plan, to which it is a fiduciary, or does it act on behalf of the borrower who is paying NBA to obtain the permanent loan? This conflict is only aggravated by the fact that NBA itself had an economic interest in the transactions in that the proceeds of the permanent loan would be used to retire the construction loans made by NBA to the borrowers.

The Secretary's motion for summary judgment is granted as to ERISA Section 406(b)(2).

### D.

#### Fees

■ The Secretary claims that receipt of origination fees violates ERISA Sections 406(a)(1)(D) and (b)(3). NBA moves for summary judgment as to Section

406(a)(1)(D). The Secretary moves for summary judgment as to Section 406(b)(3).

#### ERISA Section 406(a)(1)(D)

ERISA Section 406(a)(1)(D) prohibits "transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan" by the fiduciary. 29 U.S.C. § 1106(a)(1)(D). NBA argues that origination fees are not "plan assets" because they were received from the borrowers, not the plans.

In *Davidson v. Cook,* 567 F.Supp. 225 (E.D.Va.1983), *aff'd,* 734 F.2d 10 (4th Cir. 1984), the court found that the fiduciaries' waiver of late fees and failure to raise the interest rate on a loan was not a violation of ERISA Section 406(a)(1)(D). The court reasoned that the interest and late fees were not "plan assets".

The origination fees at issue here are distinguishable from waived fees or waived interest in that the origination fees were paid from the proceeds of the permanent loan which the plan funded. Thus, the receipt of the origination fees may constitute a violation of ERISA Section 406(a)(1)(D).

NBA's motion for summary judgment is denied as to ERISA Section 406(a)(1)(D).

#### ERISA Section 406(b)(3)

ERISA Section 406(b)(3) provides:

A fiduciary with respect to a plan shall not—

. . . .

(3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

29 U.S.C. § 1106(b)(3).

In order for the receipt of fees to constitute a violation of ERISA Section 406(b)(3), the fees must be paid "in connection" with the investment of asset plans. This "in connection" requirement departs from the strict common law rule that trustees may not profit from transactions involving trusts. *Lowen v.*

---

**22.** There is also no genuine issue of fact that NBA effected these loans without a § 408 exemp-

tion. *See* discussion below.

*Tower Asset Management,* 829 F.2d 1209, 1214–15 (2d Cir.1987). The fiduciary must prove:

> [T]he transaction in question fell within an exemption, or must prove by clear or convincing evidence that compensation it received was for services other than a transaction involving the assets of a plan.

*Id.* (citations omitted).

NBA admits that the origination fees it received for its account were for the origination of the "take-out" loans.[23] These loans were indisputably transactions involving assets of a plan. In order to withstand the Secretary's motion for summary judgment on this claim, NBA must demonstrate that the origination fees fall within an exemption to the prohibited transactions provided for in ERISA.

NBA argues that three exemptions apply to the receipt of origination fees: ERISA Sections 408(c)(2), 408(b)(2), and 408(b)(6). ERISA Section 408(c)(2) provides:

> Nothing in section 1106 of this title shall be construed to prohibit any fiduciary from—
>
> (2) receiving any reasonable compensation for services rendered, or for the reimbursement of expenses properly and actually incurred, in the performance of his duties with the plan[.]

29 U.S.C. § 1108(c)(2). Looking to the plain language of the statute, the exemption does not apply to origination fees. The statute requires that the fees be received in performance of a fiduciary's duties with the plan. The origination fee was received in NBA's representation of the borrower, not the plan.

The next exemption NBA turns to is ERISA Section 408(b)(2), 29 U.S.C. § 1108(b)(2). ERISA Section 408(b)(2) does not provide for an exemption from prohibi-

tions of ERISA Section 406(b)(3). 29 C.F.R. § 2550.408b–2(a), (e).

The last exemption NBA relies on is ERISA Section 408(b)(6) which provides for an exemption from prohibited transactions if the services are "ancillary" bank services. 29 U.S.C. § 1108(b)(6). ERISA Section 408(b)(6) does not provide for an exemption from an act described in ERISA Section 406(b)(3). 29 C.F.R. § 2550.408b–6(a).

The Secretary has come forward and shown that there is no genuine issue of material fact as to whether NBA violated ERISA Section 406(b)(3). NBA has failed to demonstrate that the origination fees come within any exemption from prohibited transactions. The Secretary's motion for summary judgment is granted as to ERISA Section 406(b)(3).

### *ERISA Sections 404(a)(1)(A), 406(b)(1), and 406(b)(2)*

The Secretary asserts that since the underlying transactions violated ERISA, it necessarily follows that the origination fees charged in connection with these prohibited transactions must also be considered violative of ERISA.[24] NBA moves for summary judgment on this issue.

NBA violated the fiduciary duties established by ERISA Sections 404(a)(1)(A), 406(b)(1), and 406(b)(2). The receipt of origination fees involved the use of the plan assets for the benefit of NBA. Without the commitment of the plan assets to the "take-out" loans, NBA would not have received the origination fees. Thus the fees are tainted by the self-dealing of the transactions.[25] NBA's motion for summary judgment is denied as to ERISA Sections 404(a)(1)(A), 406(b)(1), and 406(b)(2).

---

**23.** Defendant's renewed motion for summary judgment at 25–26 (Clerk's Docket No. 164).

**24.** Plaintiff's opposition to renewed motion for summary judgment at 42 (Clerk's Docket No. 166).

The case the Secretary cites as authority deals with the disgorgement of fees pursuant to ERISA Section 409(a), 29 U.S.C. § 1109(a), once the court found a fiduciary had violated a duty imposed upon the fiduciary by ERISA. *Lowen v.*

*Tower Asset Management,* 829 F.2d 1209 (2d Cir. 1987).

**25.** The Secretary also claims that receipt of origination fees violates ERISA Section 406(a)(1)(C) which prohibits a fiduciary from engaging the plan in a transaction which constitutes an indirect or direct "furnishing of goods, services, or facilities between the plan and a party in interest." 29 U.S.C. § 1106(a)(1)(C). Origination fees are not goods, services, or facilities.

The Secretary claims that the servicing fees for the Sitka loan received by NBA violated ERISA Sections 404(a)(1)(A), 406(a)(1)(C, D), 406(b)(1), (2).[26] Once again, the servicing fees are tainted by the self-dealing of the underlying transactions. NBA's motion for summary judgment is denied. Although the Secretary has not made a motion for summary judgment, the court grants summary judgment in favor of the Secretary *sua sponte* on the claims that receipt of the servicing fees violates ERISA Sections 404(a)(1)(A), 406(a)(1)(D), and 406(b)(1) and (2).

## III.

## CONCLUSION

NBA's motion for summary judgment is denied in its entirety. The Secretary's motion for summary judgment is granted. In addition, the court grants summary judgment *sua sponte* in favor of the Secretary on the claim that receipt of servicing fees for the Sitka loan violates ERISA Sections 404(a)(1)(A), 406(a)(1)(D), and 406(b)(1) and (2).

## ORDER

Defendant seeks reconsideration (Clerk's Docket No. 176) of the court's order of August 28, 1992. The motion is opposed. Oral argument has not been requested and is not deemed necessary.

By and large defendant seeks to re-argue seven aspects of the court's August 28, 1992, order. The court is unpersuaded by defendant's arguments. As to the two items which appear to concern defendant the most (points 1 and 7), the court has the following observations.

As to defendant's point 1, defendant appears to confuse the court's conclusion that the Secretary would be barred from collecting servicing fees on the Sitka and DOWL loans, which would be barred by the statute of limitations, with the Secretary's claim based upon fees for "take-out loans" which are affected by self dealing.

With respect to point 7, it seems clear to everyone that the Secretary had actual knowledge of servicing agreements entered into by defendant. However those agreements make no reference to any particular loan. Knowledge of these agreements does not establish that the Secretary had knowledge of any particular loan which, because of an ERISA violation, would be actionable.

Again, the motion for reconsideration is denied.

---

**26.** Plaintiff's opposition to renewed motion for summary judgment at 43–44 (Clerk's Docket No. 166).