[636 NYS2d 741]

In the Matter of BANKERS TRUST COMPANY, as Trustee of BANK-
ERS TRUST COMPANY CAPITAL INCOME FUND, Appellant-
Respondent. FREDERICK SIEGMUND, as Guardian Ad Litem
for Persons Interested in Income, Respondent-Appellant.

First Department, December 21, 1995

### APPEARANCES OF COUNSEL

*David S. Klafter* of counsel, New York City *(Elizabeth P. Munson* and *Joan Morgan McGivern* on the brief; *White & Case,* attorneys), for appellant-respondent.

*Frederick Siegmund,* New York City, respondent-appellant *pro se.*

### OPINION OF THE COURT

Asch, J.

This case involves objections by the guardian ad litem for income beneficiaries of a common trust fund to an accounting filed by the trustee petitioner-appellant, Bankers Trust Company. It has broad implications for the manner in which these common trust funds are allowed to operate in the State of New York.

Bankers Trust Company is the trustee of eight "common trust funds". The common trust fund is authorized by Banking Law § 100-c and is a separate entity from the estates or trusts

whose money is invested in it. A bank or trust company purchases with the commingled funds of individual trusts or estates a large number of investments, each of which would be legal for all of the participating trusts. Each individual trust thereby obtains its proportional share of the common trust fund, with denominations purposely made small so that trusts with small balances for investment can enter; in this manner, the bank can accept smaller trusts which it would otherwise find too burdensome to administer (*see*, Bogert, Trusts § 105, at 382 [6th ed 1987]; Bogert and Bogert, Law of Trusts and Trustees § 677 [rev 2d ed 1982]; 3 Scott and Fratcher, Law of Trusts § 227.9 [4th ed 1988]; *Martin v National Bank*, 828 F Supp 1427, 1432, n 14 [D Alaska 1992]). The novel element in the legislation authorizing common trust funds is that, contrary to the common-law rule, the trustee is permitted to commingle the assets of the otherwise separate constituent trusts under its administration *(see,* Bogert and Bogert, *op cit.,* at 64; Restatement [Third] of Trusts § 227, comment *m,* at 50-51).

Initially, common trust funds faced the obstacles of decisions holding that they were "associations" for Federal tax purposes (*Brooklyn Trust Co. v Commissioner of Internal Revenue*, 80 F2d 865 [2d Cir 1936], *cert denied* 298 US 659), as well as subject to New York income tax (*Matter of City Bank Farmers Trust Co. v Graves*, 272 NY 1 [1936]), thereby rendering impractical the use of this investment device.

However, the Revenue Act of 1936 (49 Stat 1648, 1708; 26 USC § 584 [b]; *see also,* Tax Law former § 365-a) exempted common trust funds from such taxation on condition that they conformed to Federal Reserve Board Regulation F, resulting in a revival of their usefulness. In 1962, authority over trust powers of national banks was transferred to the Comptroller of the Currency, and Regulation F was replaced by Regulation 9 (12 USC § 92a; 12 CFR 9.12 *et seq.*).

Regulation 9 (12 CFR 9.18 [a] [1]) authorizes the establishment of common trust funds for investment of funds held by national banks in their roles as fiduciaries. Pursuant to the regulation, each common trust fund must be established and maintained in accordance with a written plan approved by a resolution of the bank's board of directors and filed with the Comptroller of the Currency. The plan "shall" contain, *inter alia*, provisions relating to the investment powers and a general statement of the investment policy of the bank with respect to the fund; and the allocation of income, profits, and losses (12 CFR 9.18 [b] [1]).

The regulation specifically provides that: "All participants in the collective investment fund shall be on the basis of a proportionate interest in all of the assets. In order to determine whether the investment of funds received or held by a bank as fiduciary in a participation in a collective investment fund is proper, the bank may consider the collective investment fund as a whole and shall not, for example, be prohibited from making such investment because any particular asset is nonincome producing." (12 CFR 9.18 [b] [3].)

Nor are banks permitted to invest in such funds in their own behalf: "No bank shall have any interest in a collective investment fund other than in its fiduciary capacity." (12 CFR 9.18 [b] [8] [i].)

Trustee banks are not permitted to invest in their own stock or obligations or in those of any affiliates (*ibid.; see also*, 12 CFR 9.12 [a] [with respect to the prohibition of self-dealing applicable to trustee banks in general]).

Finally, Regulation 9 provides that: "A national bank administering a collective investment fund shall have the exclusive management thereof." (12 CFR 9.18 [b] [12]).

Following the models of the Federal regulation and the Uniform Common Trust Fund Act, numerous States have enacted enabling statutes authorizing the creation of common trust funds (*see*, Bogert and Bogert, *op. cit.*, at 65-67). Banking Law § 100-c is such a statute. The Banking Law mandates periodic accounting (§ 100-c [6]), and delegates to the State Banking Board the promulgation of rules and regulations to govern the administration of common trust funds (§ 100-c [10]).

The Banking Board General Regulations (3 NYCRR part 22) supply the details for the periodic accounting of trustees and the auditing of their funds. As with the Federal regulations, the State regulations require each common trust fund to file a plan of operation (3 NYCRR 22.1).

The State regulations also contain a provision virtually identical to the management requirement set forth in section 9.18 (b) (12) of the Federal regulations ("A trust company administering a common trust fund shall have the exclusive management thereof" [3 NYCRR 22.20]). The State regulations impose two additional requirements (3 NYCRR 22.2) regarding management and record-keeping: "Responsibility for the management and conduct of each common trust fund shall be vested in a trust investment committee composed of at least three members, who shall be capable and experienced officers

or directors of the trust company. This committee shall keep minutes of all its decisions and activities." (3 NYCRR 22.2.)

The instant proceeding concerns the eighth periodic accounting for the subject common trust fund, the "Bankers Trust Company Capital Income Fund", formerly known as Discretionary Common Fund C, for the period from May 1, 1984 through December 31, 1990.

The trustee bank petitioned for settlement of its account. In response, the guardian ad litem for the persons interested in the trust income (income guardian) raised five objections to settlement of the trustee's account. The guardian ad litem for the persons interested in the trust principal (principal guardian) joined in only one of these objections, i.e., relating to the trustee's purchase of subordinated convertible bonds of Bonneville Pacific Corporation and to the retention of said bonds. This objection is not before us on this appeal.

The Surrogate's Court initially denied the trustee bank's motion for summary judgment as to the remaining four objections, but, thereafter, granted reargument as to the income guardian's objection that the fund's investment of fund assets in other banks' stocks violates Banking Law § 97, and granted the trustee summary judgment on that objection while otherwise denying the bank's motion for reargument.

While the Surrogate's Court found that issues of fact existed with regard to three of the remaining non-Bonneville objections as to whether the fund was managed in accordance with the bank's own guidelines and regulatory requirements and whether there were acts of self-dealing, there was no elaboration as to what these factual issues were. We agree with the trustee's argument that the court's order creates legal uncertainty regarding fund practices and procedures where there is no such uncertainty, and where the State of New York has strong public policy reasons to encourage the use of this State and its laws in the operation and maintenance of these innovative and useful funds by financial institutions. Prompt disposition of these objections based on legal interpretations by the income guardian fulfills the very purpose for which common trusts were created, to promote efficient and less expensive administration of trusts and thereby allow smaller estates and trusts to participate at lower transaction and management fees. Since no factual issues were raised on any of the four objections before us, the Surrogate's Court should have granted summary judgment as to all of them. Parenthetically, the new version of the prudent investor rule (*see*, Restatement [Third]

of Trusts § 227), which provides for greater flexibility in individual investments because of the recognition that consideration should be given to the portfolio as a whole, is not applicable to the accounting period at issue herein. New York's adoption of the new version of the rule did not take effect until 1995 (*see*, EPTL 11-2.2, 11-2.3).

To warrant a surcharge, the objectant must show that a financial loss resulted from the trustee's negligence or failure to exercise that degree of care which prudent persons of discretion and intelligence in such matters employ in their own affairs (*see, Matter of Donner*, 82 NY2d 574, 585 [1993]; *Matter of Bank of N. Y. [Spitzer—Koenig]*, 35 NY2d 512, 518-519 [1974]; *Matter of Bankers Trust Co. [Hahn Found.]*, 62 NY2d 821, 824 [1984]; *Bauer v Bauernschmidt*, 187 AD2d 477, 478 [2d Dept 1992]; *see also*, EPTL 11-2.2). There was no such showing on any of the objections at issue herein.

■ The first objection before us relates to the trustee's allocation of fund assets between income-oriented investments and investments calculated to benefit principal, with the allegation that income was inadequate. The income guardian asserted that the fund had been marketed as one promising "current income yield above the market average", yet despite such expectation the fund had produced progressively lower yields and lower distributions of current income. This result was said to violate the fund's own guidelines, the trustee sacrificing income to enhance the principal value. The income guardian also asserted that annual yield had gone downward over the accounting period, that the bank's reliance on the Standard & Poor 500 Index was misleading, and that Treasury bills would have been a more appropriate investment for income.

With respect to this objection, while the fact that the portfolio showed over-all increase in total value during the accounting period does not insulate the trustee from responsibility for imprudence with respect to individual investments for which it would otherwise be surcharged (*Matter of Bank of N. Y. [Spitzer—Koenig]*, 35 NY2d, *supra*, at 517), the fact that slightly more income would have been earned had the trust purchased Treasury bills or some other investment does not establish a breach of duty which would warrant a surcharge (*see, Matter of Miller*, 116 AD2d 580, 581 [2d Dept 1986], *lv dismissed* 67 NY2d 609).

As the bank correctly maintains, the income guardian confuses yield with income and would sacrifice the investment objective of the fund, requiring a balance of principal growth

with income production, for an improper goal of maximum income growth. Thus, in this regard, in response to the bank's initial showing of entitlement to judgment on this issue, the income guardian failed to carry his burden of raising a triable issue of fact, much less the burden of showing his own entitlement to judgment, as to the trustee's negligence. The test is one of conduct rather than performance (*Matter of Morgan Guar. Trust Co.*, 89 Misc 2d 1088, 1091 [Sur Ct, NY County 1977]), and the trustee's conduct was not shown to be deficient.

■ The second objection before us related to the trustee's investment of $10 million in the Bankers Trust Company's International Fund. It was alleged that, while the common trust fund was supposed to produce "current income above the market proxy", the June 21, 1989 Fourth Amendment to the Master Plan of Operation established the International Fund with an inconsistent investment objective—"potential for long term growth in principal value *without regard for current income*" (emphasis supplied). In addition, the investment in the International Fund was alleged to be imprudent, as well as violative of the trustee's duty of loyalty (though neither category was articulated *in haec verba*), because the trustee was thereby taking trust funds allocated to established investment vehicles and using them to launch a new and untested investment vehicle.

With respect to this objection, that the bank improperly invested the common trust funds in its own International Fund, which was also a common trust fund, the guardian's allegation that the bank was motivated by the desire to market its own new investment product was based only upon speculation, and not upon circumstances properly inferred from facts. Thus, while a trustee not only has an absolute duty of loyalty but must also distance itself from situations where its interest *may be* in conflict with its duty (*see, Matter of Lewisohn*, 294 NY 596, 608 [1945]; *Albright v Jefferson County Natl. Bank*, 292 NY 31, 39 [1944]), the possibility of disloyalty was pure speculation on the part of the income guardian. In addition, it is not disputed that the bank does not receive any fees or commission from any investment in any common trust fund. It earns fees only by acting as fiduciary for individual accounts regardless of whether they are invested in common trust funds or elsewhere. Moreover, this investment in international securities is authorized by the Master Plan of Operation of the subject common trust fund, which was approved by the State Banking Department, as were cross-fund investments by one

fund in another. Further, the bank was not prohibited from investing in another common trust fund, or in an affiliate, since those proscriptions apply only to investment by banks on their own account and not in a fiduciary capacity (12 CFR 9.18 [b] [8] [i]; 9.12 [a]). Thus, summary judgment should have been granted striking this objection.

■ The third objection before us related to the trustee's purchase of shares in several banking corporations, because (the income guardian maintained), under Banking Law § 97, a trust company is not empowered to hold any stock of another bank. The income guardian specifically recognized that the trustee's purchase was not on its own behalf, but rather in its separate capacity as a trustee of the fund, but nonetheless contended that the purchase violated the statute because the trustee acquired the right to vote the stock and exercise other rights of legal ownership. However, the statutory prohibition is limited to situations where the bank invests on its own account, rather than as a fiduciary. The Banking Department of the State of New York confirmed this interpretation of the Banking Law by a letter from an assistant counsel for the Department which is part of the record. Accordingly, the Surrogate properly granted the trustee's motion for summary judgment on this objection upon reargument.

■ In the fourth and final objection before us, the income guardian alleged that the trustee had failed to comply with the State Banking Board regulation which requires (1) management of the fund by a management committee, and (2) the keeping of minutes (3 NYCRR 22.2). The guardian maintained that, instead of a three-member committee, the trustee had improperly delegated actual responsibility for management of the fund to a single individual, the fund manager Raymond A. Beplat. Mr. Beplat would then obtain the initials of the other two fund committee members on a pro forma basis, inasmuch as they never declined to initial Beplat's buy/sell order slips. The minutes, rather than providing any information with respect to "the consideration given to any judgment exercised", were said to consist of merely pro forma recitations of completed transactions.

In an affidavit from the fund manager, there was a description of the trust fund's investment decision process: The totality of the bank's trust funds were under the management of a 15-member Collective Investment Fund Committee, all of whom were senior officers of the bank. Three of the members reported to Mr. Beplat, the fund manager. Committee meet-

ings were held monthly, at which the committee considered investment goals and investment action taken and reviewed the portfolios of the various trust funds administered by the bank. A quorum of three committee members (generally the fund manager and two others) was needed to authorize investment transactions for any of the common trust funds, a system substantially similar to those used in other banks where Mr. Beplat had worked. As clarified in his deposition, there were ordinarily no separate formal committees for each trust fund, but quorums of the larger 15-member committee; however, in the case of the common trust fund, there *was* a separate committee to fulfill the requirements of Banking Board General Regulations (3 NYCRR) § 22.2.

The committee's and the fund manager's decisions were based, in part, on research provided by the bank's analysts and conforming to guidelines set forth by various investment strategy groups composed of senior portfolio managers, who regularly monitored the suitability of equity investments and rated securities in various categories based upon performance.

In his deposition, Mr. Beplat provided a similar description of fund management. He also testified that discussions with the individual portfolio managers would not appear in the minutes of the Collective Investment Fund Committee. The minutes of the Trust Investment Committee (i.e., for the instant common trust fund) would indicate attendance at the meeting and accounts that had been opened or closed, and would have the Collective Investment Fund Committee minutes appended. However, discussion regarding transactions that did not ultimately take place was not set forth. Beplat could not recall any instances when the other two common trust fund committee members had refused to sign off on a proposed investment for that fund.

As noted, upon the undisputed facts, the income guardian maintained that, despite the formal committees in place, the bank was merely paying lip service to the investment committee requirement (3 NYCRR 22.2) because, in fact, the counterinitialling by two other bank officers was always pro forma; the regulation was said to require "a more meaningful, structured framework for * * * each fund". Since no counterinitialling was necessary to retain a security already in the fund portfolio, it was argued that the decision to *retain* a security effectively rested with the fund manager (Beplat). As to the keeping of minutes, the guardian relied upon Beplat's testimony that only completed transactions were noted, and not the deliberations behind the decisions.

This objection, with respect to the adequacy of the minutes, should have been dismissed. The State banking regulations do not prescribe the contents, and there is no basis for requiring details of the deliberative processes within the trust committee. Thus, section 22.2 of the General Regulations of the Banking Board provides as noted above: "Responsibility for the management and conduct of each common trust fund shall be vested in a trust investment committee composed of at least three members, who shall be capable and experienced officers or directors of the trust company. This committee shall keep minutes of all its decisions and activities."

The stated purpose of this revised regulation was to remove superfluous language and procedural details which are unnecessary and to ease administrative burdens (NY Reg, Apr. 1, 1987, at 3, col 1). The regulation, therefore, does not require detailed minute-keeping.

The portion of the objection relating to the alleged violation of the management committee requirement should also have been dismissed. The fact that the other committee members never declined to sign off on the fund manager's decisions does not lead to the conclusion that they abdicated their duties and effectively allowed decisions to be made by only one person. The income guardian's argument on this point is entirely speculative and insufficient to defeat the bank's motion for summary judgment.

Accordingly, the order of the Surrogate's Court, New York County (Eve Preminger, S.), entered on or about March 15, 1995, which, *inter alia*, denied renewal with respect to objections numbered 1, 3, and 5, granted the petitioner trustee's motion with respect to objection number 4 and dismissed said objection, should be modified, on the law and facts, to the extent of granting renewal with respect to objections numbered 1, 3 and 5, and thereupon, granting petitioner's motion for summary judgment dismissing these objections, and otherwise affirmed, without costs or disbursements.

Appeal from the order of the same court and Surrogate, entered March 2, 1994, which denied petitioner's motion for summary judgment seeking dismissal of the income guardian's objections to the trustee's accounting, should be dismissed, as subsumed by the appeal from the above order, without costs or disbursements.

MURPHY, P. J., ELLERIN, KUPFERMAN and MAZZARELLI, JJ., concur.

Order, Surrogate's Court, New York County, entered on or about March 15, 1995, which *inter alia*, denied renewal with

respect to objections numbered 1, 3, and 5, granted the petitioner trustee's motion with respect to objection number 4 and dismissed said objection, modified, on the law and facts, to the extent of granting renewal with respect to objections numbered 1, 3 and 5, and thereupon, granting petitioner's motion for summary judgment dismissing these objections, and otherwise affirmed, without costs or disbursements. Appeal from the order, same court and Surrogate, entered March 2, 1994, dismissed, as subsumed by the appeal from the order of March 15, 1995, without costs or disbursements.