| |
|---|
| **Matter of De Sanchez** |
| 2025 NY Slip Op 30072(U) |
| January 8, 2025 |
| Surrogate's Court, New York County |
| Docket Number: File No. 2001- |
| Judge: Hilary Gingold |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

New York County Surrogate's Court
DATA ENTRY DEPT.

JAN 0 8 2025

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------------------x

In the Matter of the Account of the Trust created under
Agreement dated September 16, 1927, between

ELIZABETH L. DE SANCHEZ,

as Grantor,

and Central Union Trust Company of New York, as
Trustee, for the benefit of Gabriela Cadenas Sanchez et al.

-------------------------------------------------------------------------------x

In the Matter of the Account of the Trust created under
Agreement dated September 16, 1927, between

ELIZABETH L. DE SANCHEZ,

as Grantor,

and Central Union Trust Company of New York, as
Trustee, for the benefit of Maria Lamar Sanchez et al.

-------------------------------------------------------------------------------x

GINGOLD, S.

DECISION & ORDER

File No. 2001-3187/A

File No. 2001-3187/E

The following papers were read in determining these motions:

Papers Numbered

Notice of Motion by Petitioner JPMorgan Chase Bank, N.A., as trustee,
dated May 3, 2024 – Memorandum of Law in Support of Trustee's
Motion for Partial Summary Judgment dated May 3, 2024 –
Affirmation of Charles J. Keeley dated May 3, 2024 and Exhibits –
Amended Notice of Motion dated May 6, 2024 – Second Amended
Notice of Motion dated May 16, 2024                                    1-5

Memorandum of Law in Opposition to JPMorgan Chase Bank's
Motion for Partial Summary Judgment dated June 7, 2024 –
Affirmation of Mark S. Sullivan dated June 7, 2024 and Exhibits –
Objectants' Memorandum of Law in Opposition to JPMorgan Chase
Bank's Motion for Partial Summary Judgment dated June 6, 2024 –
Affidavit of Stan V. Smith sworn to May 2, 2024 and Exhibits –
Affidavit of Kerry Campbell sworn to April 29, 2024 and Exhibits –      6-10

Trustee's Reply Memorandum of Law in Further Support of its
Cross-Motion for Partial Summary Judgment dated July 3, 2024 –

[* 1]

Third Affirmation of Charles J. Keeley dated July 3, 2024 and Exhibits      11-12

Notice of Motion by Objectants Pedro and Adolfo Arellano Lamar
dated May 3, 2024 – Memorandum of Law in Support of the
Arellano Lamars' Motion for Partial Summary Judgment dated May 3, 2024
– Affirmation of Richard A. Scalfani dated May 3, 2024 – Affirmation of
Pedro Arellano Lamar dated May 3, 2024 and Exhibits – Affirmation of
Mark S. Sullivan dated May 3, 2024 and Exhibits – Amended Notice of
Motion dated May 15, 2024      1-6

Notice of Motion by Objectants Marcelo E. Fanjul, Justo E. Fanjul,
Flora Fanjul de Suarez, Anna Fanjul, Julio A. Fanjul, Elisa G. Lamar,
Emilio J. Lamar, Maria E. Lamar, Ana Maria Lamar, Peter Raul Lamar,
Diane Lamar de Puccetti, Maria Luisa Suarez Rivas, Marcelo Lamar,
Beatriz Lamar de Diego, Luis Lamar, and Justo Lamar, Jr. dated
May 3, 2024 – Objectants' Memorandum of Law in Support of their
Motion for Partial Summary Judgment dated May 3, 2024 – Affidavit
of Kerry Campbell sworn to April 29, 2024 and Exhibits – Affidavit of
Stan V. Smith sworn to May 2, 2024 and Exhibits      7-10

Second Affirmation of Charles J. Keeley dated June 6, 2024 and
Exhibits – Trustee's Memorandum of Law in Opposition to
Objectants' Motions for Partial Summary Judgment dated June 7, 2024
– Affidavit of Charles Porten sworn to June 6, 2024 and Exhibits –
Affidavit of Michael J. A. Smith filed June 7, 2024 and Exhibits      11-14

Reply Memorandum of Law in Further Support of the Arellano
Lamar's Motion for Partial Summary Judgment dated July 3, 2024 –
Reply Affirmation of Mark S. Sullivan dated July 3, 2024 and Exhibits      15-16

Supplemental Affidavit of Kerry Campbell sworn to July 5, 2024
and Exhibits – Objectants' Reply Memorandum of Law in Further
Support of their Motion for Partial Summary Judgment dated July 5, 2024      17-18

Before the court are three motions for partial summary judgment in these contested trust accounting proceedings.

Background

In 1927, Elizabeth de Sanchez (Ms. de Sanchez), as grantor, under agreements with Central Union Trust Company of New York (now through a series of mergers and name changes, known as JP Morgan Chase Bank, N.A.), as trustee (Trustee), created seven *inter vivos* trusts for the

2

benefit of her six children: Emilio Sanchez (two trusts), Jorge B. Sanchez, Julio Sanchez, Marcelo Sanchez, Maria Sanchez de Lamar, and Gabriela Sanchez de Cadenas. Each trust agreement directed the Trustee to pay the trust's net income to the initial beneficiary, monthly, for his or her lifetime (Affirmation of Charles J. Keeley dated May 3, 2024, Exh A [Trust Agreements] and Exh C [Report of the Guardian *Ad Litem* filed in the 1953 Accounting Proceedings]). Each trust continued until the death of the last "measuring life" named in the respective instrument. At the time the trusts were created, Maria, Emilio, and Gabriela each had one or more children and his or her then-living children were the named measuring lives in the respective trust agreements. Jorge, Marcelo, and Julio had no children, and each was designated as the sole measuring life for each of their respective trusts.

Each of the seven trust agreements were the same in so far as they related to the investment powers of the Trustee. The agreements gave the Trustee broad powers of investment. During the lifetime of the grantor, the Trustee was authorized, subject to the grantor's consent and direction, to sell or dispose of any securities at any time, to invest and reinvest the same, and to invest in securities that were not allowed trustees under the laws of the State of New York. After the death of the grantor, the Trustee possessed sole investment authority over the trusts. Its investment powers remained broad, but the Trustee was limited to investing in securities as are allowed trustees under the laws of the state of New York. The initial principal, divided equally for the benefit of the grantor's six children, was $498,944 (Keeley Aff, Exh B [1953 Accounting Order]).

Ms. de Sanchez died on March 15, 1951. Thereafter, in 1953, the Supreme Court, New York County, settled the Trustee's first intermediate accounts for all seven trusts from their inception through the date of the grantor's death (*Matter of De Sanchez*, Index No. 9650/1952 [Sup Ct, New York County]; Keeley Aff, Exh B [1953 Order]). Subsequently, in separate proceedings

3

filed in 1974, after the death of Jorge, Emilio, and Marcelo, the Trustee judicially settled in Supreme Court, New York County, an account of the proceedings for their four trusts (Emilio had two trusts) from March 15, 1951, through July 25, 1972 (*Matter of De Sanchez*, Index No. 04574/1974 [Sup Ct, New York County] and *Matter of De Sanchez*, Index No. 04573/1974 [Sup Ct, New York County]; Keeley Aff, Exhs D and E [1974 Order and 1975 Order]).

In 2005, some thirty years later, certain income and remainder beneficiaries of the Jorge, Emilio and Marcelo trusts moved, in the original Supreme Court proceedings, to vacate the judicial settlements of these trust accountings under CPLR 5015 on the grounds of lack of personal jurisdiction and constructive fraud or other misconduct. By decision and order dated January 3, 2008, the Supreme Court denied the motions to vacate, finding, in relevant part that there was no fraud or misconduct because the family members were notified of the proceedings and had a full and fair opportunity to contest the accounts (Keeley Aff, Exh J; *Matter of De Sanchez*, 18 Misc3d 1138[A], at *9 [Sup Ct, NY County 2008]). This decision was affirmed by the Appellate Division, First Department by its decision and order dated December 30, 2008 (*Matter of De Sanchez*, 57 AD3d 452 [1st Dep't 2008]).

During the pendency of the Supreme Court proceedings, certain trust beneficiaries also commenced litigation in this Court by filing petitions to compel the Trustee to account. In response thereto, the Trustee filed its account for Maria's, Emilio's and Gabriela's trusts. Objections to these accounts were filed in 2005. On August 28, 2008, after the Supreme Court issued its decision on the motions to vacate but prior to the appellate decision, Pedro Arellano Lamar, individually, and in his capacity as personal representative of the estate of Elizabeth Lamar de Arellano, along with Adolfo Arellano Lamar, as beneficiaries, filed supplemental objections to the Trustee's accounts in Maria's and Emilio's trust accounting proceedings pending in this Court, claiming that certain

4

trust investments were tainted by self-dealing and a conflict of interest which the Trustee failed to disclose in the 1953 and 1975 accounting proceedings (*Matter of De Sanchez*, File No. 2001-3187 [Sur Ct, New York County]; Keeley Aff, Exh O). Thereafter, these objectants moved in this Court for partial summary judgment on their supplemental objections, and the Trustee cross-moved for summary judgment seeking dismissal of these objections on the ground of *res judicata*, or, alternatively, to have the motions referred to the Supreme Court.

In addressing the motions for partial summary judgment, this Court found that the supplemental objections in this matter related to the same investments previously adjudicated by the Supreme Court in the 1953 and 1975 accounting proceedings, and then more recently, by the Supreme Court's 2008 decision denying the motions to vacate the accounting decrees in those proceedings. Accordingly, by decision and order dated September 3, 2009, this Court denied the objectants' motion and granted the Trustee's cross-motion only to the extent of referring the motions back to the Supreme Court, New York County (*Matter of De Sanchez*, 2009 NYLJ Lexis 4852 [Sur Ct, New York County, Sept 3, 2009]). By decision and order dated March 22, 2010, the Supreme Court denied the objectants' motion for summary judgment on the supplemental objections, granted the Trustee's cross-motion, and dismissed the supplemental objections, holding that the 1953 Order settling the account for these trusts was conclusive as to all issues raised therein and as to any issues that could have been raised, including the supplemental objections alleging self-dealing (*Matter of De Sanchez*, NYLJ, April 5, 2010, at 18, col 1 [Sup Ct, NY County]). This decision was also affirmed by the Appellate Division, First Department, by its decision and order dated February 8, 2011 (*Matter of De Sanchez*, 81 AD3d 456 [1st Dep't 2011]).

Currently before the Court are two accounting proceedings brought by the Trustee to judicially settle its second and final account of its proceedings for the Maria Trust and its second

5

intermediate account of its proceedings for the Gabriela Trust, covering the period from March 15, 1951, to July 27, 2011 (Keeley Aff, Exhs Q-T). Certain income beneficiaries and remainder beneficiaries of these trusts, the great and great-great grandchildren of Ms. de Sanchez, filed objections to the accounts: (1) Pedro Arellano Lamar, individually and as executor of the Estate of Elizabeth Lamar de Arellano, and Adolfo Arellano Lamar, individually (together Arellano Lamars Objectants), filed objections to the Maria Trust accounting (Keeley Aff, Exh W); (2) Julieta Cadenas, Eugenio J. Silva, individually and as personal representative of the Estate of Julieta Cadenas Silva, and as deceased personal representative of the Estate of Gabriela Sanchez de Cadenas, Felipa G. Silva, Justo E. Fanjul, individually and as executor of the estate of Flora Lama de Fanjul, Luis B. Lamar, individually and as personal representative of the Estate of Maria Lamar, Justo Lucas Lamar (son of Justo Lamar Sanchez, deceased), Beatriz Lamar Diego (daughter of Justo Lamar Sanchez, deceased), Marcelo Lamar (son of Justo Lamar Sanchez, deceased), Maria Lamar Suarez Rivas (daughter of Justo Lamar Sanchez, deceased), Maria Elizabeth Lamar, Ana Maria Lamar (f/k/a Ana Maria Lamar de Casares), Elisa Gloria Lamar, Emilio Jose Lamar, Peter Lamar, Diana Puccetti (a/k/a Diana Puccetty), Flora Fanjul Suarez, Marcelo Lamar, Maria Luisa Lamar Suarez (a/k/a Maria Luisa Suarez Fanjul), Jorge B. Fanjul, Julio A. Fanjul and Marcelo E. Fanjul (together Various Objectants), filed objections to the Maria Trust accounting (Keeley Aff, Exh X); and (3) Julieta C. Silva, Julieta Cadenas, Eugenio J. Silva, and Felipe G. Silva (together Gabriela Objectants), filed objections to the Gabriela Trust accounting (Keeley Aff, Exh V) (all together Objectants).

The objections are substantially similar, alleging that the Trustee, in making its investment decisions and managing the trust assets, breached its fiduciary duty to the Objectants by: (1) failing to communicate with the trust beneficiaries regarding their investment needs and objectives, and

6

with respect to substantive issues about the trusts (Keeley Aff, Exhs V, W, X); (2) failing to apply the prudent person and prudent investor standards to the trusts at various time periods, including imprudently investing exclusively in bonds from 1951-1967; (3) failing to maintain and retain sufficient records; (4) failing to conduct periodic reviews of the investments, in violation of the Trustee's own policies; (5) failing to evaluate the propriety of investing trust assets in Trustee sponsored funds or to consider other funds; (6) failing to create an investment plan and failing to manage the investments based on beneficiary needs and market conditions; (7) failing to properly distribute trust assets and converting them; and (8) engaging in self-dealing by investing trust assets in companies in which the Trustee held a substantial business interest and/or overlapping directors (Keeley Aff, Exhs V, W, X).

The Trustee now moves in both proceedings for partial summary judgment seeking an order dismissing the objections in part on the grounds that (1) the First Department's 2008 decision precludes, under the doctrine of collateral estoppel, the objections regarding the alleged impropriety of the Trustee's bond investments from 1951-1967; and (2) that the "lost profit" measure of damages is inapplicable as a matter of law because the Trustee did not engage in any self-dealing transactions (Trustee Motion). The Arellano Lamars Objectants move in the Maria Trust Accounting proceeding for partial summary judgment on the issue of liability for breach of fiduciary duty by the Trustee (Arellano Lamars Motion). Finally, the Various Objectants also move in the Maria Trust proceeding for partial summary judgment on the issue of liability (Various Objectants Motion). These motions were submitted on July 10, 2024, and are consolidated for purposes of this decision and order.

7

Discussion

It is well-established that "[t]he proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material issues of fact from the case" (*Pullman v Silverman*, 28 NY3d 1060, 1062 [2016]). The burden then shifts to the motion's opponent "to present evidentiary facts in admissible form sufficient to raise a genuine, triable issue of fact" (*Sumitomo Mitsui Banking Corp v Credit Suisse*, 89 AD3d 561, 563 [1st Dept 2011], citing *Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]). If there is any doubt as to the existence of a triable issue of fact, the motion for summary judgment must be denied (*O'Brien v Port Auth of NY and NJ*, 29 NY3d 27, 37 [2017], citing *Sillman v Twentieth Century-Fox Film Corp.*, 3 NY2d 395, 404 [1957]).

Trustee Motion

In its motion for partial summary judgment, the Trustee seeks an order dismissing the objections in part on the grounds that (1) the First Department's 2008 decision affirming the denial of the motion to vacate the prior orders judicially settling certain trust accountings precludes, under the doctrine of collateral estoppel, the objections that the trustee breached its fiduciary duty by investing the trust's assets exclusively in bonds until 1967; and (2) that the "lost profit" measure of damages is inapplicable as a matter of law because the Trustee did not engage in any self-dealing transactions.

*Collateral Estoppel*

In its motion for partial summary judgment, the Trustee first argues that the Objectants are precluded, under the doctrine of collateral estoppel, from challenging the Trustee's decision to invest exclusively in bonds from 1951 until 1967.

8

In support, the Trustee relies on the First Department's 2008 decision wherein the court affirmed the Supreme Court's decision denying the movants' motion to vacate the 1953, 1974 and 1975 Orders settling the Trustee's account for the trusts. In its decision, the First Department rejected the movants' argument that the prior orders settling the trust accounts should be vacated on the grounds of fraud or other misconduct under CPLR 5015(a)(3), stating that "[a]fter the trusts were created in 1927, the goal of the investment fiduciary throughout the Great Depression and long thereafter was to preserve the principal while creating a reasonable income . . . The trust investments were not for growth of assets for the grantor's grandchildren and great grandchildren, but rather in accordance with her express direction that they be in securities that were 'long term' and 'tax exempt'" (*Matter of De Sanchez*, 57 AD3d 452, 454 [1st Dep't 2008]). Based on this language, the Trustee now argues that the First Department ruled that the Trustee's investment in bonds for the first sixteen years of the accounting period was not, as a matter of law, a breach of its fiduciary duty and thus the Objectants are collaterally estopped from challenging these investments in their objections.

"Collateral estoppel or issue preclusion prevents a party from relitigating in a subsequent action or proceeding an *issue* clearly raised in a prior action or proceeding and decided against that party whether or not the causes of action are the same" (*see Simmons v Trans Express Inc*, 37 NY3d 107, 112 [2021] [internal quotations and ellipses omitted]). "The doctrine applies only where the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action and the party who is being estopped had a full and fair opportunity to litigate the issue in the earlier action" (*Id*). "Furthermore, collateral estoppel should not be applied mechanically" (*Capstone Bus Funding, LLC v Shames Constr Co*, 205 AD3d 606, 607 [1st Dep't 2022]). "[T]he fundamental inquiry is whether relitigation should be permitted in a particular

9

case in light of what are often competing policy considerations, including fairness to the parties, conservation of the resources of the court and the litigants, and the societal interests in consistent and accurate results" (*Simmons*, 37 NY3d at 112).

As an initial matter, the First Department's 2008 decision simply does not apply to the investment decisions in the Maria and Gabriela trusts from 1951 to 1967. These trusts have not been judicially settled since the 1953 Order. The 1974 and 1975 Orders at issue in the motions to vacate and the subsequent appeal only pertained to the Jorge, Emilio, and Marcelo trusts, and were judicially settled after the death of the initial beneficiaries. Thus, the propriety of the Trustee's bond investments for the Maria and Gabriela trusts for the first sixteen years of the accounting period was not adjudicated by the First Department's 2008 decision, and the Objectants are not collaterally estopped from addressing this issue in the current accounting proceedings (*Simmons*, 37 NY3d at 112 [collateral estoppel applies only when the issue in the second action is identical to an issue that was decided in the first action]).

Further, the Trustee's argument that collateral estoppel applies is misplaced because the Trustee ignores the procedural posture of the First Department's 2008 decision. While the decision includes a discussion of general investment standards, this discussion was within the context of the prior motion to vacate under CPLR 5015(a)(3) based on constructive fraud. The First Department did not evaluate each of the trusts' investment portfolios or engage in any detailed analysis as to the appropriateness of the investments to determine whether the Trustee breached its fiduciary duty.

The extensive briefing on the appeals and the underlying motions in the prior proceedings further demonstrate that the issue of the Trustee's breach of fiduciary duty was not before the court. The underlying motions to vacate under CPLR 5015(a)(3) focused on one dispositive

argument: whether the Trustee properly notified the movants of the prior accounting proceedings (Keeley Aff, Exhs F, G, H). While the motion papers discussed, in general terms, the Trustee's allegedly imprudent investment strategy, the legal argument under CPLR 5015(a)(3) was that the prior orders settling the accounts should be vacated because the Trustee failed to notify the movants of the proceedings. This was the issue decided by the Supreme Court in its decision, which held that the motions to vacate must be denied because "none of the beneficiaries appeared in the accounting proceedings to contest the accounts, and there is no evidence that they were led to believe that they should not contest these accounts" (*Matter of de Sanchez*, 18 Misc3d at *9).

Likewise, on appeal, the movants argued that the prior orders settling the accounts should be vacated because the Trustee engaged in constructive fraud by failing to disclose relevant information regarding its investments in the accounts and by failing to apprise the movants about the nature of the proceedings or their interest therein (Keeley Aff, Exhs K-M). The movants' briefs on appeal had no discussion regarding the Trustee's specific investment strategy or the relevant investment standards. Thus, like the underlying motion, the issue on appeal was whether the Trustee engaged in constructive fraud by making false statements in the accounts or by failing to notify the movants about the proceedings (*Oppenheimer v Westcott*, 47 NY2d 595, 603 [1979]; *HSBC Bank USA NA v Kantor*, 215 AD3d 643, 644 [2d Dep't 2023] [discussing "intrinsic" and "extrinsic" fraud under CPLR 5015(a)(3)]).

Viewing the First Department's 2008 decision within this context, it is evident that the First Department did not and could not adjudicate the propriety of the Trustee's bond investments as this issue had not been properly brought before the court. Rather, the only issue litigated was whether prior accounting decrees should be vacated under CPLR 5015(a)(3) on the ground that the Trustee allegedly engaged in constructive fraud by failing to file full, accurate and complete

11

accountings and further failing to properly notify the movants about the accounting proceedings, their interest in the proceedings and their right to contest the proceedings.

By contrast, the issue in these proceedings is the prudence of the Trustee's all bond investments. This issue requires an analysis of different facts and laws (*see Matter of Janes*, 90 NY2d 41, 50 [1997] ["No precise formula exists for determining whether the prudent person standard has been violated in a particular situation; rather, the determination depends on an examination of the facts and circumstances of each case."]). Thus, the allegations regarding the Trustee's bond investments cannot be dismissed on the ground of collateral estoppel as the First Department's decision presented a different issue from the Objectants' current claims (*Matter of Asch*, 164 AD3d 787, 789 [2d Dep't 2018] [holding that collateral estoppel did not apply where the actions required "the establishment of different facts and the application of different laws"]).

In its reply, the Trustee argues that the issue of the bond investments was a key part of the movants' arguments in support of vacating the prior accounting orders on the ground of constructive fraud because the movants were trying to show that the Trustee obtained a possible benefit through the fraud by covering up its allegedly imprudent investments. However, as previously discussed, the movants' arguments regarding constructive fraud centered on the Trustee's alleged failure to notify the movants of the prior accounting proceedings and its alleged omission of certain information from the accountings. The movants argued that such conduct constituted constructive fraud and they did not need to show that the Trustee acted with intent to defraud given the parties' fiduciary relationship and the fact that the Trustee benefited from its actions by covering up years of malfeasance. In this context, the movants' reference to the Trustee's alleged malfeasance and imprudent investments was generalized and tangential to its constructive fraud argument and therefore the prudence of the bond investments was not fully and

12

actually litigated by movants (*see Jeffreys v Griffin*, 1 NY3d 34, 41 [2003] ["whether to apply collateral estoppel depends upon general notions of fairness involving a practical inquiry into the realities of litigation"]). Thus, the Trustee's motion for summary judgment on the ground of collateral estoppel must be denied.

*Lost Profits*

In its motion for partial summary judgment, the Trustee also argues that in the event it is found liable for breach of fiduciary duty for imprudent investments, its liability is limited to negligence and mismanagement and thus, under *Matter of Janes*, 90 NY2d 41 (1997), the Objectants' demand for appreciation or lost profits damages must be stricken.

It is fundamental that a fiduciary must make the trust whole for any damage resulting from a breach of the fiduciary's duty (*Matter of Rothko*, 43 NY2d 305, 322 (1977)]). The calculation of such damages is predicated upon the type of misconduct or breach of fiduciary duty found (*Scalp & Blade, Inc v Advest, Inc*, 309 AD2d 219, 226 [4th Dep't 2003]). Under the Court of Appeals' decision in *Matter of Janes*, the measure of damages for negligent and imprudent failure to invest and diversify is the value of lost capital (*Matter of Janes*, 90 NY2d at 55; *Williams v JP Morgan & Co*, 199 FSupp2d 189, 193 [SDNY 2002]). This is calculated by determining the value of the securities at the time they should have been sold, minus their value at the time they were ultimately sold, or if unsold, at the time of the accounting (*Matter of Janes,* 90 NY2d at 55). However, where there has been a breach of trust extending beyond mere negligence and committed for the personal gain of the fiduciary, the award of lost profits may be an appropriate measure of damages for the mismanagement of an investment portfolio (*Matter of Rothko* at 322; *Scalp & Blade*, 309 AD2d at 229). Under this theory, the beneficiaries are entitled to recover the difference between what they would have had if the assets were legitimately managed, estimated in most cases by the market

13

index, minus what they in fact had at the time the misconduct ended (*Scalp & Blade*, 309 AD2d at 231).

*Matter of Janes* was an accounting proceeding by petitioner, Lincoln First Bank, to judicially settle its account for a testamentary trust created for the benefit of decedent's widow and certain charities for the period 1973 to 1994. The objectants argued that the trustee failed to act prudently by failing to sell and diversify its investment interests. The trust's interests were concentrated in the Eastman Kodak Company, which suffered a steep decline during the relevant period. In affirming the Surrogate's Court finding of liability after trial, the Appellate Division, Fourth Department found that the trustee, in violation of prudent practice and its own guidelines, failed to conduct a formal analysis of the estate assets, failed to implement an investment plan or establish any investment goals for the beneficiaries, failed to communicate with the beneficiaries regarding the trust's performance, concealed and misrepresented the losses from the beneficiaries, and, when faced with a steep decline in the stock price, did nothing to protect the interest of the beneficiaries or prevent the estate from incurring disastrous losses (*Matter of Janes*, 223 AD2d 20, 30-32 [4th Dep't 1996]). Nevertheless, the Appellate Division overturned the Surrogate's award of lost profit damages, holding that the proper measure of damages for a fiduciary's negligent retention of assets is the value of the capital that was lost (*Id* at 34). The Court of Appeals affirmed the decision, finding that the Appellate Division correctly rejected the Surrogate's lost profits measure of damages (*Matter of Janes*, 90 NY2d 41, 55). The Court held that "the Surrogate's reliance on *Matter of Rothko* in imposing a 'lost profit' measure of damages is inapposite, since in that case the fiduciary's misconduct consisted of deliberate self-dealing and faithless transfers of trust property" (*Id*).

14

Since then, courts have followed these guidelines in determining the proper measure of damages for breach of fiduciary cases involving allegedly imprudent investments. For instance, in *Scalp & Blade, Inc v Advest, Inc*, 309 AD2d 219 (4th Dep't 2003), the Appellate Division, Fourth Department, once again opined on this issue, finding that "lost profit" damages may be appropriate in a case involving the mismanagement of a trust fund where there were allegations that the trustee engaged in "churning" or excessive trading (*Id* at 232). The court held that the plaintiffs had "alleged a necessary predicate for such recovery, namely, a breach of fiduciary duty extending beyond mere negligent retention of the portfolio's holdings and violation of a duty to sell or diversify" (*Id; see also Matter of Witherell*, 37 AD3d 879 [3d Dep't 2007] [upholding award of appreciation damages where trustee removed half of estate assets from New York without warning or approval and was responsible for significant loss of these assets by authorizing an unsuitable investment in junk bonds]). However, where the cases do not involve malfeasance or self-dealing but are based on the negligent management of investments, courts have uniformly awarded lost capital damages (*Matter of Hunter*, 100 AD3d 996 [2d Dep't 2012]; *Matter of Saxton*, 274 AD2d 110 [2d Dep't 2000]; *Matter of Strong*, 41 Misc3d 1231[A] [Sur Ct, Monroe County 2013]; *Williams v JP Morgan Chase*, 199 FSupp2d 189 [SDNY 2002]; *see also Matter of Newhoff*, 107 Misc2d 589, 595-96 [Sur Ct, Nassau County 1980] [holding that the measure of damages where the initial investments are found to be imprudent is lost capital], *aff'd*, 107 AD2d 417 [2d Dep't 1985]).

Here, the crux of the objections is that the Trustee breached its fiduciary duty by not actively managing the investments. Towards this end, the Objectants allege that the Trustee imprudently invested the trust assets by failing to communicate with the beneficiaries regarding their investment needs, failing to consider the interest of the remainder beneficiaries, failing to

15

develop an investment plan, and failing to analyze, monitor and manage the investments on an on-going basis based on beneficiary needs and market conditions, including long-periods of inactivity with no trading. These objections sound in negligence and failure to meet prudent investment practices, rather than deliberate self-dealing or faithless transfers of property. Indeed, these allegations are similar to the facts in *Matter of Janes*, where the court imposed liability on the fiduciary not only for its imprudent failure to diversify but also for its "indifference, inaction, nondisclosure, and outright deception in response to the prolonged and steep decline in the worth of the estate" (*Matter of Janes*, 223 AD2d at 29).

Furthermore, although the objections include some allegations of self-dealing, these claims lack merit. For instance, the Objectants allege generally that the Trustee engaged in self-dealing by investing in companies in which it had a substantial business interest. In support, the Objectants cite to the Trustee's purchase of bonds or stocks from large private and public corporations, such as IBM and the Triborough Bridge & Tunnel Authority, which allegedly shared a single overlapping director with the Trustee. While a corporate trustee is prohibited from purchasing property for a trust from an affiliate or subsidiary corporation in which it has a controlling interest, the allegations in the Objections fail to support "an interest in the entities in question of such a substantial nature that there would be a temptation" for a trustee to have a conflict of interest (*Matter of de Sanchez*, 81 AD3d 456, 457 [1st Dep't 2011] [citing *Matter of Ryan*, 291 NY 376, 406 (1943) and affirming dismissal of similar objections in prior accounting proceeding for the Maria Trust]). Likewise, the Objectants' allegation that the Trustee engaged in self-dealing by investing in a common trust fund lacks merit as these funds are authorized under New York Banking Law § 100-c (*see Matter of Bankers Trust Co [Siegmund]*, 219 AD2d 266 [1st Dep't 1995]). Finally, the Objectants' allegation that the Trustee engaged in self-dealing by investing the

16

trust's assets in proprietary mutual funds is meritless as these investments are authorized under EPTL 11-2.3(d) and the Trustee has demonstrated that it did not collect double fees as both trustee and fund manager (*Matter of JP Morgan Chase NA [Roby]*, 122 AD3d 1274 [4th Dep't 2014]).

In their opposition, the Objectants argue that *Matter of Janes* is distinguishable because in *Janes*, the fiduciary's misconduct consisted solely of negligent retention of a single asset whereas here, the Trustee's misconduct was more egregious. However, while the failure to diversity was one of the issues in *Janes*, the court also found that the trustee breached its duties by failing to create an investment plan, failing to follow its own review protocols and policies, failing to communicate with the beneficiaries and failing to consider the needs of the beneficiaries. As discussed above, the allegations in this proceeding are similar and thus *Janes*, which limits the lost profits measure of damages to cases involving "deliberate self-dealing and faithless transfers of trust property," is applicable (*Matter of Janes*, 90 NY2d at 55).

The Objectants also argue that the lost capital formula is inappropriate because it would deny recovery to the beneficiaries. However, it is the Objectants' burden to show that a financial loss resulted from the trustee's imprudent investments (*Matter of Bankers Trust Co [Siegmund]*, 219 AD2d 266, 272 [1st Dep't 1995]; *Matter of HSBC Bank [Knox]*, 98 AD3d 300, 310 [3d Dep't 2012] ["the mere fact that a trust might have been able to earn more money through other investments does not establish a breach of duty which would warrant a surcharge"]). The Objectants may not relieve themselves of this burden by relying on an erroneous theory of damages.

The Objectants also rely on the court's decision in *Williams v JP Morgan Chase*, 296 FSupp2d 453 (SDNY 2003), *opinion withdrawn and vacated*, 2004 US Dist Lexis 22721 (SDNY Sept 24, 2004), to argue that the lost capital formula is inappropriate.

17

*Williams* was an action by the remainder beneficiaries of an *inter vivos* trust against the trustee for breach of fiduciary duty based on the trustee's negligent and imprudent failure to invest and diversify the assets of the trust. In a prior decision in *Williams*, the court held that the rule in *Janes*, limiting lost profit damages to cases involving self-dealing was applicable, and found that lost profit damages were unavailable to plaintiff since his allegations sounded in negligence and imprudent conduct (*Williams v JP Morgan Chase*, 199 FSupp2d 189, 196 (SDNY 2002). Thus, this decision directly undercuts the Objectants' argument in this case as the court granted the identical relief that the Trustee seeks here, namely, to strike the demand for lost profits.

Subsequently, the trustee in *Williams* moved for summary judgment seeking to dismiss the breach of fiduciary claim because the absolute value of the trust increased, and thus, the trustee argued, the plaintiff could not show that he had been damaged by the trustee's conduct under a strict application of the lost capital formula (*Williams*, 296 FSupp2d at 456). The court in *Williams* denied that motion, holding that the plaintiff could establish some amount of damages sufficient to maintain a claim for breach of fiduciary duty (*Id* at 459). Although the court did not determine the formula for calculating damages, it discussed with approval a calculation of lost capital that takes into account the real-world value of the assets, i.e. inflation (*Id* at 457-59).

Like the first decision in *Williams*, this decision also undercuts the Objectants' position. Here, the Objectants argue that absent lost profit damages, they would be left without a remedy since the nominal value of the trusts increased during the accounting period. However, under *Williams*, the fact that there may have been a nominal net gain in the absolute value of the trusts does not absolve the Trustee of its obligation to comply with the prudent person and prudent investor standards and does not bar the Objectants' claims. Thus, contrary to the Objectants' argument, striking the lost profit measure of damages does not necessarily preclude their recovery

18

of damages. Accordingly, the Trustee's motion to strike the Objectants' demand for an award of lost profits damages is granted.

<u>Motions by Arellano Lamars Objectants and Various Objectants</u>

The Arellano Lamars Objectants and the Various Objectants (together the "Moving Objectants") move for partial summary judgment on liability on their objections in the Maria Trust accounting proceeding, arguing that the Trustee breached its fiduciary duty to the beneficiaries by failing to comply with the prudent person and prudent investor rules which were in effect during the accounting period from 1951 to 2011.

The accounting here spans two different legal standards for trust administration. Under the prudent investor rule, which was effective for most of the relevant period, a trustee was required to "employ such diligence and such prudence in the case and management of the trust, as in general, prudent men of discretion and intelligence in such matters, employ in their own like affairs" (*Matter of Janes*, 90 NY2d 41, 50 [1997]). Under this rule, "the preservation of the fund, and procurement of a just income therefrom, are primary objects of the creation of the trust itself, and are to be primarily regarded" (*Id*). In 1995, the Prudent Investor Act (EPTL 11-2.3) became the governing standard for fiduciaries, and the statute imposes an affirmative duty on a fiduciary to invest and manage property with "reasonable case, skill and caution to make and implement investment and management decisions as a prudent investor would for the entire portfolio, taking into account the purposes and terms and provisions of the governing instrument" (*Id*).

Under either standard, the fiduciary's conduct is not evaluated by outcome but rather "is determined in light of facts and circumstances prevailing at the time of the decision or action of the trustee" (EPTL 11-2.3[b]; *Matter of Janes*, 90 NY2d at 51). Further, when evaluating a fiduciary's decisions, "it is not sufficient that hindsight might suggest that another course would

19

have been more beneficial; nor does a mere error of investment judgment mandate a surcharge" (*Matter of Bank of New York*, 35 NY2d 512, 519 [1974]). Rather, the test is prudence, not performance, and evidence of losses does not, by itself, establish imprudence (*Matter of HSBC Bank USA, NA [Knox]*, 98 AD3d 300, 309 [4th Dep't 2012]).

In evaluating a fiduciary's conduct, the court must consider the fiduciary's actions along with relevant factors such as the size of the trust, the performance of the market, the situation and needs of the beneficiaries, any potential tax consequences, the prospect of inflation and deflation, and the marketability of the investment (*Matter of Janes*, 90 NY2d at 51). "No precise formula exists for determining whether the prudent person standard has been violated in a particular situation; rather, the determination depends on an examination of the facts and circumstances of each case" (*Id* at 50). Thus, the determination of whether a fiduciary's conduct measures up to the appropriate standards of prudence, vigilance, and care generally presents an issue of fact for the trial court (*Matter of Donner*, 82 NY2d 574, 585 [1993] [citing *Matter of Hubbell*, 302 NY 246, 258 (1951)]).

The Moving Objectants, as the parties contesting the Trustee's accounting, have the initial burden to show that the Trustee improperly exercised its fiduciary duty by failing to comply with the prudent person and prudent investor standards of care (*Matter of Rubin*, 30 AD3d 668, 670 [3d Dep't 2006]; *Matter of Curtis*, 16 AD3d 725, 726 [3d Dep't 2005]). Further, to warrant a surcharge, they "must show that a financial loss resulted from the trustee's negligence or failure to act prudently" (*Matter of Bankers Trust Co [Siegmund]*, 219 AD2d 266, 272 [1st Dep't 1995]). If there is no causal connection between the conduct and the loss, then there is no basis upon which to surcharge the fiduciary (*Matter of HSBC Bank USA, NA [Knox]*, 98 AD3d 300, 310-11 [4th Dep't 2012]).

Turning now to the motions, the Moving Objectants argue that the Trustee acted imprudently by failing to create an investment plan or investment objectives for the Maria Trust, failing to communicate with the income beneficiaries and remaindermen of the trust, failing to consider the needs and circumstances of the beneficiaries when making investments, and failing to review, monitor and analyze the investments. According to the Moving Objectants and their experts, these breaches caused significant financial damage to the Maria Trust and its beneficiaries, causing the trust to lose approximately half of its value over the course of the accounting period (Affidavit of Kerry Campbell sworn to April 19, 2024, ¶ 78; Affidavit of Stan Smith sworn to May 2, 2024, ¶ 29-30).

In opposition, the Trustee argues that the Moving Objectants have failed to meet their burden to show that the Trustee acted imprudently or that the Trustee's conduct caused any loss to the trust. Further, the Trustee submits the affidavits of its own experts, who claim that the Trustee's investment decisions and process comported with prudent investment management. The Trustee argues that, at a minimum, the decades-long investment history of the trust raises a myriad of factual issues that cannot be determined on summary judgment (Affidavit of Charles Porten sworn to June 6, 2024; Affidavit of Michael J.A. Smith).

For purposes of clarity, the relevant timeframes for analyzing the Moving Objectants' allegations of wrongdoing for the accounting period are as follows:

*1951-1960*

After the death of Ms. de Sanchez in 1951, the Trustee had sole authority under the trust instrument to make investment decisions. Nevertheless, according to the Moving Objectants, the Trustee did not create an investment plan or policy for the assets in the Maria Trust nor did it meaningfully assess its investments. In addition, the Moving Objectants claim that the Trustee did

21

not communicate with Ms. de Sanchez's daughter, Maria Sanchez de Lamar, the income beneficiary of the Maria Trust, regarding her needs, nor did it consider the needs of the remainder beneficiaries of the trust. During this time, the trust's assets were wholly invested in tax-exempt bonds. The Moving Objectants claim that the Trustee should have invested in stocks during this period up to the statutory limit of 35%, which would have hedged against inflation and preserved the value of the trust.

In opposition, the Trustee disputes the Moving Objectants' position that the Trustee failed to communicate with Maria during this period and cites to numerous letters between the Trustee and Maria's family. While most of the Trustee's communications regarding Maria's trust were with her brothers, Emilio and Jorge Sanchez, according to the Trustee's expert, it was not uncommon during this time period for the beneficiaries of inter-related family trusts to rely on one or two family members to communicate with the trustee. The Trustee also provided Maria with regular biannual account statements and annual security statements which contained detailed information regarding the trust's holdings. In addition, the Trustee argues that after the death of Ms. de Sanchez, it continued its investment policy by following the family's preference for investments in long-term and tax-exempt bonds. This was advantageous to Maria, the income beneficiary of the trust, because of the high tax rate on non-resident alien income, and because inflation during this time was low. The Trustee contends that given these facts, and contrary to the objectants' claims, Ms. de Sanchez's death did not require a change in the Trustee's investment policy or a re-allocation of the Trust's assets to common stock.

There are many factual issues concerning the prudence of the Trustee's conduct during this time. For instance, whether the Trustee's level of communication and lack of a written investment policy constitutes a breach of fiduciary duty or reflects the family's practice and the industry

22

standard is an issue of fact that cannot be resolved on summary judgment (*Matter of Hubble*, 302 NY 246, 258 [1951] ["Normally, the determination of whether the conduct of a trustee measures up to the appropriate standards of prudence, vigilance and care, is a fact to be found by the trial court."]). Moreover, even if such conduct was imprudent, it is unclear whether this caused any damages or whether the Trustee's all bond investments were nevertheless proper in light of the circumstances, particularly since most of the bonds were purchased at the direction of the grantor and were decades away from maturity (*Matter of HSBC Bank USA, NA [Knox]*, 98 AD3d 300, 309 ["retention of securities received from the creator of the trust may be found to be prudent even when purchase of the same securities might not."]; *Matter of Bankers Trust Co [Siegmund]*, 219 AD2d 266, 272 ["objectant must show that a financial loss resulted from the trustee's negligence"]). Accordingly, summary judgment for this period must be denied.

### *1960-1967*

Following the Cuban Revolution in 1959, Maria emigrated to the United States. As a result, she could no longer rely on income from her family's property in Cuba and was left with almost nothing, except for the income from the trust and some savings accounts. Despite her changed circumstances, the Moving Objectants claim that the Trustee continued to ignore Maria and her needs by failing to communicate with her. The Moving Objectants claim that during this time, the Trustee should have adjusted its investment policy to account for Maria's present need for more income and her changed tax status by allocating maximum allowable assets to investments in common stocks.

In opposition, the Trustee points out that it did communicate directly with Maria during this time and even helped her apply for U.S. resident status. The Trustee also claims that it was aware of the family's changed circumstances and adjusted its investments by trading into bonds

23

which had a higher interest rate. While the objectants' expert claims that the Trustee's investments were improper and that the Trustee should instead have invested in corporate bonds and common stocks, the prudence of the investments cannot be decided on summary judgment (*Matter of Hubble*, 302 NY at 258).

### 1968-1979

In 1968, Maria corresponded with the Trustee via letter and informed the Trustee that given her new tax status, she no longer needed investments in tax-exempt bonds. She also stated that she wanted to maximize her income from the Trust as she could write it off her Cuban losses. The Trustee agreed and stated that it would sell off its investments in tax-exempt bonds and invest half of the assets in common stocks, up to the statutory limit, and the other half in taxable corporate bonds. However, while the Trustee invested half of the assets in common stocks, it mistakenly purchased tax-exempt municipal bonds, instead of taxable corporate bonds, with the other half of the assets. In an internal memorandum in October 1969, the Trustee noted the error but decided to hold onto the bonds to see if it could sell them at cost, rather than at a loss. The Trustee sold the bonds in 1979 and 1983, after the municipal bond market had improved.

The Moving Objectants argue that the Trustee's purchase of the municipal tax-exempt bonds was a breach of fiduciary duty as the Trustee itself recognized that it was supposed to have invested these assets in taxable corporate bonds. Instead of promptly correcting this mistake, the Moving Objectants allege that the Trustee compounded the error by holding onto the bonds for the next ten years and misled Maria by concealing this error. In response, the Trustee argues, based on its expert report, that contrary to the objectants' contention, taxable corporate bonds are not necessarily a better investment than municipal bonds and that the Trustee acted reasonably by holding onto the municipal bonds until the market improved in order to minimize losses. The

24

Trustee also argues that it did not conceal the error from Maria as it regularly sent her statements which listed the trust's holdings in tax-exempt bonds.

Whether the Trustee's mistaken investment in tax-exempt bonds in 1968 and its decision to retain the bonds was a breach of fiduciary duty presents an issue of fact that cannot be resolved on summary judgment (*Matter of Hubble*, 302 NY at 258; *Matter of Bank of New York*, 35 NY2d 512, 518-19 ["Our courts do not demand investment infallibility."]). Further, whether the Trustee was obligated to affirmatively notify Maria of its error under the relevant standard of care, or whether its regular statements to her were sufficient, also presents an issue of fact. Finally, it is unclear if an investment in taxable corporate bonds, rather than municipal tax-exempt bonds, would have benefitted the remainder beneficiaries of the trust since Maria, as the income beneficiary, would have received the entire income from these investments.

The Moving Objectants also argue that the Trustee breached its fiduciary duty during this time by only making a handful of trades and failing to take any action to minimize the adverse impact of rising inflation and an economic recession. However, the level of trading by itself is insufficient to show that the Trustee acted imprudently and the objectants fail to show what actions should have been undertaken during this time to avoid the losses (*Matter of Bankers Trust Co [Siegmund]*, 219 AD2d at 272 [objectant must show that a financial loss resulted from trustee's negligence]). Further, the Trustee has raised an issue of fact by showing that it did try to navigate these conditions by making favorable trades (*Matter of Bank of New York*, 35 NY2d at 518-19 [trustee could not be surcharged for losses where trustee acted prudently with respect to each investment]). Thus, once again, there are issues of fact regarding the prudence of the Trustee's investment decisions and the causation of damages which preclude summary judgment.

25

[* 25]

*1979-1983*

During this time, the Trustee liquidated its holdings and invested the trust's assets in its own common trust funds. The Moving Objectants claim that this was a breach of fiduciary duty because the Trustee failed to consider alternative investments and because it continued to be heavily invested in tax-exempt assets, which they claim was not beneficial to Maria or the remainder beneficiaries. In opposition, the Trustee argues that investment in common trust funds is expressly authorized under Banking Law § 100-c and that these funds were widely used as investments for personal trusts because they are a cost-effective way of minimizing management costs and maintaining a diversified portfolio. Further, the Trustee's expert contends that taxable holdings would not necessarily have been a better investment given the surge in municipal bond yields in the early 1980s which made them more beneficial to people in the 30% tax bracket like Maria. Thus, there are issues of fact regarding the prudence of the Trustee's investment in its common trust funds and its investment in non-taxable holdings which preclude summary judgment (*Matter of Hubble*, 302 NY at 258).

*1983-2001*

The Moving Objectants argue that the Trustee breached its fiduciary duty during this period by failing to actively monitor and trade on its investments and by failing to communicate with Maria's children who became the new income beneficiaries of the trust after she died in 1994. However, objectants' generalized allegations of malfeasance are insufficient because they fail to show that the Trustee's actions (or inaction) caused damages to the trust (*Matter of Bankers Trust Co [Siegmund]*, 219 AD2d at 272). Moreover, the Trustee points out that it did change its investment strategy after Maria's death by increasing its investment in equities. Accordingly, summary judgment for this period must be denied.

26

*2001-2011*

The Moving Objectants argue that the Trustee breached its fiduciary duty during this period by divesting the assets from its common trust funds and investing them in its proprietary mutual funds, thereby creating unnecessary risk of the assets at the end of the trust's term. However, once again, objectants fail to show that these actions harmed the trust. In fact, the value of the trust increased during this period. Further, the Trustee's expert opines that this may have been a prudent investment strategy as it reflected the Trustee's access to new investment vehicles following JPMorgan's merger with Chase in 2000. Thus, summary judgment for this period must be denied.

In sum, there are a myriad of factual issues regarding the prudence of the Trustee's conduct and investments, and the causation of damages, which must be determined by a trier of fact (*Matter of Hubble*, 302 NY at 258).

Accordingly, it is

ORDERED that that the Trustee's motion for partial summary judgment is granted to the extent that the demand for lost profit damages in the Maria Trust (E) and Gabriela Trust (A) proceedings is stricken, and is otherwise denied; and it is further

ORDERED that the motions by the Arellano Lamars Objectants and the Various Objectants for partial summary judgment on liability in the Maria Trust accounting proceeding are denied; and it is further

ORDERED that the parties shall appear for a pre-trial conference on March 25, 2025, at 11:00 in person in courtroom 509 at 31 Chambers, New York, New York 10007.

Dated: January 21, 2025

_____
S U R R O G A T E

27

To:

James Coster, Esq.
Duane Morris LLP
230 Park Avenue, 11th Floor
New York, New York 10169
(212) 404-8751
jjcoster@duanemorris.com
*Attorney for Petitioner JP Morgan Chase Bank, NA*

Mark Sullivan, Esq.
Dorsey & Whitney LLP
51 West 52nd Street
New York, New York 10019
(212) 415-9200
sullivan.mark@dorsey.com
*Attorney for Objectants Pedro and Adolfo Arellano Lamar*

Kenneth McCallion, Esq.
McCallion & Associates LLP
100 Park Avenue, 16th Floor
New York, New York 10017
(646) 366-0884
kfm@mccallion.com
*Attorney for Various Objectants and Gabriela Objectants*

[* 28]